THOMAS MCROBERTS, vs. W. D. WASHBURNE et al.

Chapter 104 of the special laws of 1858, page 303, is not repugnant to sec. 2 of article 10 of the Constitution of this State.

Section 2 of said chapter operated as a repeal of the first proviso of section 7 of chapter 71, page 269 of the session laws of 1857. The mere fact of riparian ownership does not authorize a riparian owner to run a public ferry to and from his own shore. The establishment and regulation of ferries is a subject under the control of the Legislature. A ferry franchise is property. A grant of a ferry franchise by the Legislature is a contract within the meaning of that provision of the Constitution prohibiting the passage of laws impairing the obligation of contracts.

Chapter 63 of the special laws of 1862, page 324, is unconstitutional. Invasions of a ferry franchise may be restrained by injunction.

This action was commenced in the Houston County District Court. The Plaintiff in his complaint alleges a grant to him from the Legislature of the exclusive right to establish and maintain a ferry across the Mississippi River within certain limits; his compliance with the terms and conditions of the grant, and that Defendants have infringed upon his rights under said grant by establishing another ferry within such limits. The Plaintiff upon

his complaint applied to the Judge of said District Court for an order for a temporary injunction, which application was resisted by Defendants, who at the hearing read the affidavit of W. D. Washburne, one of the Defendants. The Judge granted the order and the Defendants appeal therefrom to this Court. A sufficient statement of the case appears in the opinion of the Court.

H. R. BIGELOW, for Appellants.

HUGH CAMERON, for Respondent.

*By the Court*—BERRY, J.—By an act of the Territorial Legislature, approved Feb. 7th, 1857, it is provided "that Thomas McRoberts, his heirs, executors, administrators or assigns shall have the exclusive right and privilege of keeping and maintaining a ferry across the Mississippi River, at a point near the Mississippi Avenue in the village of La Crescent, for the period of fifteen years, and no ferry shall be established within one mile and a half below or above said point." *Laws* 1857, 268–9. Sections 2, 3, 4, 5, 6, are not here important. Section 7 read in this wise : "Nothing herein contained shall be construed to contravene the provisions of any other act, except that the said Thomas McRoberts shall have the exclusive right of ferriage within the distance of one mile and a half above and below the center of the said Mississippi Avenue. *Provided,* The right hereby granted shall not extend beyond the land now owned by said McRoberts and his associates. And *provided further,* That nothing contained in this act shall be construed as to affect the rights and privileges granted to the Winona and La Crosse Railroad Company, approved February 25th, 1856." By an act- of the State Legislature, approved July 23d, 1858, (see *Laws* 1858, *page* 303,) the territorial limits within which McRoberts was authorized to exercise his ferriage rights, were considerably enlarged, and it was provided that no ferry should be established within one mile and a half above or below the enlarged limits. McRoberts alleges in his complaint that in 1857, he established a ferry as he was authorized

to do by law, and has ever since maintained the same in accordance with the provisions of the original act of 1857, and the amendatory act of 1858; that in so doing he has incurred large expense, &c., and that Washburne and his co-Defendants have infringed upon his exclusive right of ferriage, by establishing and running a rival ferry within the territory added by the act of 1858 to his original limits, as defined in the act of 1857. The complaint also contains a statement of the damages resulting from this alleged invasion of his rights. And here the Appellants' counsel interpose the objection that the act of 1858 is in conflict with Section 2 of Article 10 of the Constitution, by which it is declared that "no corporation shall be formed under special acts except for municipal purposes." Now, without stopping to consider whether any or how extensive an enlargement of the franchises of a corporation already in existence is prohibited by this provision of the Constitution, it would evidently be necessary in order to bring the act of 1858 within the letter or spirit of the prohibition, to show that Thomas McRoberts was endowed with corporate powers. There is not a word in either of the acts referred to, conferring upon him a single distinctive attribute of a corporation. See *Angell & Ames on Corp.*, sec. 1–10 *inclusive*, 1 *Bl. Com.*, 475. Section 1, Art. 10 of the Constitution itself settles the question as follows : "The term 'corporation' as used in this article, shall be construed to include all associations and joint stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges," &c. It can hardly be contended that Thomas McRoberts answers to this definition. The act of 1857 simply granted a franchise to "Thomas McRoberts, his heirs, executors, administrators or assigns," and no more constituted him a corporation, than would the County Commissioners, had they endowed him with similar privileges by granting him a ferry license. Nor does the fact that the franchise came directly from the State, make the person upon whom it is conferred a corporation, any more than a conveyance of school land by the State, makes the grantee a corporation. The counsel for the Appellants further

contend that by the terms of Section seven, of the act of 1857, it was expressly enacted "that the right hereby granted shall not extend beyond the lands now owned by said McRoberts and his associates," and that for this reason the complaint is defective in not stating that the ferry of the Appellants is established and run upon or within a mile and a half above or below any lands owned by McRoberts and his associates, and mentioned in the acts of 1857 and 1858. If it be true that McRoberts is confined in the exercise of his right of ferriage to lands owned as above, this objection might appear to be well taken. On the other hand it is claimed by the Respondent that he was exonerated from this condition by section 2, of the act of 1858. By the first section of that act he is endowed with the exclusive and unrestricted privilege of establishing and maintaining a ferry within certain limits therein designated, and section 2 provides "That section seven (which we have quoted at length,) in said act (referring to the act of 1857,) be and is hereby amended so as to contravene and repeal all acts conflicting with section one in this amendatory act, except so much of section seven as relates to the rights of the Winona and La Crosse Railroad Company." There can be no doubt that a restriction by which an otherwise unrestricted grant is made less is in conflict with that grant. And we have no hesitation in saying that section two of the act of 1858, operated as a repeal of that part of the act of 1857, which confined McRoberts in the exercise of his ferry franchise to the lands owned by himself and his associates. We think a very forcible argument in favor of this construction might be drawn from the circumstance that in the same section two, the Legislature has excepted the rights of the Winona and La Crosse Railroad Company from the repeal. As by the act of 1857, these rights were excepted by a proviso immediately following the proviso limiting McRoberts' ferry franchise to the land of himself and associates, and in the same section there would seem to be no doubt that it was the intention of the Legislature to repeal all other restrictions and limitations as to the territory in which the franchise could be exercised. No reason can be given why one proviso should be excepted from the repeal and not the

other, unless it was the intention to repeal the latter and leave the former in operation.

No question is made upon the right of a State in the exercise of its police powers, to grant the franchise of a ferry upon the Mississippi River, according to the doctrines enunciated in *Conway vs. Taylor's Executors*, 1 *Black.*, 634. But the Appellants insist "that the riparian owner at any point on the river has a right to and from his own shore and bank to operate a ferry or any other boat upon the river, and that the Legislature of Minnesota cannot take away that right," and that therefore the complaint is insufficient because it fails to state "that the ferry boat of the Appellants is operated to and from land not their own." No authorities are cited in support of this position. All the books speak and treat of the right to run a ferry boat for public accommodation and to charge tolls, as a franchise. In *Mills vs. St. Clair Co.*, 8 *How. U. S.*, 581, the Court say that they deem the general principle not open to controversy "that the establishment and regulation of ferries is a subject within the control of the government and not matter of private right, and that the government may exercise its powers by contracting with individuals." (2 *Black. Com.*, 38; *Id.*, 236; 15 *Pick. R.*, 249.) Kent defines franchises to be certain privileges conferred by grant from government and vested in individuals. (2 *Kent's Com.*, 458. *See also* 1 *Black.*, 634 *supra;* 2 *Washburn, R. P.*, 20.) And ferries which by the common law were regarded as "*publici juris*," and not to be established except on special authority from the crown, have in many if not all the States of the Union, been subjected to the control of the Legislature, which has not hesitated by special as well as general enactments, to regulate them as matters of public police, and to confer upon individuals as well as corporations, exclusive rights of ferriage within certain limits, and in no case, so far as we have been able to discover, has the fact that a third party was the owner of a part of the shore within those designated limits, justified him in establishing a rival ferry therein. (2 *Washburn R. P.*, 19, 20, 21.) As Justice Swayne says in *Conway vs. Taylor's Executors*, "The vitality of such a franchise

lies in its exclusiveness. The moment the right becomes common the franchise ceases to exist." In 1862 an act was passed by the Legislature repealing the act of 1858, which we have cited. It is claimed by the counsel for the Respondent that this act was unconstitutional, as impairing the obligations of a contract. We think the point well taken. It is to be noticed that the Legislature reserved no right of alteration or repeal in the act of 1858. The doctrine seems to be that in a proper case, in the exercise of its right of eminent domain, the State may condemn a franchise equally with any other species of property, making compensation therefor. (2 *Wash. R. P.*, 23 ; *Brunson vs. Mayor of New York*, 10 *Barb.*, *S. C. R.*, 245. But that is not this case. As Kent says, (3 *Com.*, 458,) grants of franchises " contain an implied covenant on the part of the government not to invade the rights vested. \* \* \* The government cannot resume them at pleasure nor do any act to impair the grant without a breach of contract. \* \* \* An estate in such a franchise and an estate in land rest upon the same principle." And Justice Swayne in the same opinion from which we have quoted above, says that " a ferry franchise is as much property as a rent or any other incorporeal hereditament or chattel or realty. It is clothed with the same sanctity and entitled to the same protection as other property." Sedgwick on *page 625, Stat. and Con. Law,* says that such grants are regarded " as contracts within the meaning of the constitution." (*See also Brunson vs. Mayor of New York*, 10 *Barb.*, 224.) It appears from the stipulation of the parties, which forms a part of the case, that on the hearing of the motion for the preliminary injunction which was granted below, the Appellants made use of an affidavit of W. D. Washburne, one of the Appellants, in opposition to the motion. The affidavit itself is not before us, but it is stipulated that " the Defendants also read in evidence an affidavit of Defendant W. D. Washburne, stating upon his information and belief, that the Target Lake Plank Road and Ferry Company became an organized company under said act of 1856 incorporating said company, and that the acts charged in the complaint as having been done by Defendants, were done by him under said

company, and with their consent and authority, and that the places where they were committed were within the territorial limits covered by the Target Lake Plank Road and Ferry Company, and outside the limits covered by the first act granting a ferry franchise to said McRoberts."

It is to be observed that all these statements are made upon information and belief. This affidavit was objected to as incompetent "to prove the organization of the Company or the rights and privileges claimed by the Defendants." Granting that the act of incorporation of the company, as is contended by the Appellants, *organized* the company, it would still be incumbent on the Appellants to connect themselves with the company by some proper averments, and this is done, as we have seen, only upon information and belief, which we think plainly insufficient when objected to as it was in this case. The Appellants insist that the affidavit was as good as the complaint, which is verified in the usual form. In the first place an inspection of the complaint will show that all of its averments are in form positive, and there are authorities in New York holding that where such is the case a verification in the usual form 'satisfies the requirements of the statute in regard to applications for injunctions. *See Woodruff vs. Fisher,* 17 *Barb. S. C.,* 229; *Smith vs. Reno,* 6 *How. Pr.,* 124; *Miner. vs. Terry, Id.,* 208; *Crocker vs. Baker,* 3 *Abb. Pr.,* 183; *Levy vs. Lay,* 6 *Abb. Pr.,* 89; *Kinkaid and Wife vs. Kipp & Brown,* 1 *Duer,* 693; *Ross vs. Longmuir,* 15 *Abb. Pr.,* 326. In the second place, the injunction in this case was not granted *ex parte,* but on a hearing of all parties, and no objection seems to have been taken to the manner in which the complaint was verified. *See Campbell vs. Morrison,* 7 *Paige,* 160. Nor does it appear that any of the averments contained in the complaint were denied by the affidavit. We think this a proper case for the allowance of an injunction. Kent says, "It (speaking of the common law) declared all such invasions of franchises to be nuisances, and the party aggrieved had his remedy at law by an action on the case for the disturbance, and in modern practice he usually resorts to chancery to stay the injurious interference by

vol. x.—5

injunction." 3 *Kent's Com.*, 459; 2 *St. Eq. Juris.*, 927; 9 *Johns.*, 587; 1 *Johns. Ch.* 615; 5 *Johns. Ch.* 110; 10 *Barb. S. C.*, 235; 2 *Wash. R. P.*, 21. It is to be remembered, and that seems to be the principle, in part at least, upon which the authorities last cited rest, that a party is entitled to an injunction where he would otherwise be driven to institute a multiplicity of suits to obtain redress, as it is plain he would be in this case, for repeated acts of infringement upon his rights.

The order allowing the temporary injunction is affirmed.