## TUGWELL & MADISON v. EAGLE PASS FERRY COMPANY.

### No. 6613.

1. **Public Ferries.**—No one is permitted to keep a public ferry and charge fees without obtaining a license from the Commissioners Court having local jurisdiction over the place and giving bond as required by the statute.

2. **Same—Power of the County Commissioners Court.** — Revised Statutes, article 1514, providing that Commissioners Courts have power to establish public ferries wherever the public interest may require it, is as full a grant of power as the Legislature could confer.

3. **Owner of Land.**—While preference is given to the riparian land owner, it is questionable whether such preference obtains at points where public roads are established across the streams of the State. It seems that condemnation of a road bed would include the crossings of streams in the line of the road.

4. **Ferries Across Boundary Streams—Rio Grande.** — The State authorities have power to grant a franchise for a ferry across the Rio Grande; such grant of itself could only be efficient to the middle of the stream, the limit of the political jurisdiction of the State.

5. **Incorporation Under the General Law.**—Articles of incorporation prepared and filed under the general laws of the State, with power " to operate a ferry between Eagle Pass and Piedras Negras," conferred the power to operate such ferry upon obtaining the necessary license so to do from the Commissioners Court of Maverick County, having jurisdiction over Eagle Pass. Without such license the act of incorporation gave no power to operate the ferry.

6. **Injunction.**—Parties having a grant of exclusive license within certain limits to run a ferry are entitled to an injunction against others operating a ferry without license and within the defined limits of the exclusive grant.

ON REHEARING.

7. **Grant of Exclusive Ferry Privileges.**—Without holding that the action of

the Commissioners Court was regular or in accordance with the law in the attempted grant it is held that it had the power to grant the license. The effect of the license was not destroyed by the facts that more was exacted for the license than the tax prescribed by statute, or that rights were sought to be granted beyond the power of the court.

8. **Injunction.**—The plaintiff showing license to operate the ferry and that a competing ferry is being operated without license and in violation of law, is entitled to an injunction protecting against such unlawful competing injury.

9. **Rights of State.**—The exercise of the power of granting ferry licenses across the Rio Grande is not an invasion of Federal jurisdiction by the State.

Appeal from Maverick. Tried below before Hon. J. H. James, Special District Judge.

This is an appeal from a judgment and decree of the District Court of Maverick County refusing an injunction at suit of appellants Tugwell & Madison.

The plaintiffs were operating a ferry across the Rio Grande at Eagle Pass under a license from the County Commissioners Court of said county. The contract between the county and Tugwell, under whom plaintiffs held, stipulated that no other license should issue. Tugwell, upon bids for the exclusive ferry rights, offered and paid $250 per annum for the ferry license and rights.

The defendant, after incorporating as a ferry company to operate between Eagle Pass and Piedras Negras, sought a license, tendering the license fees, but was refused. It continued to operate a ferry at Eagle Pass. A preliminary injunction was issued, but at hearing it was dissolved and the bill dismissed with damages.

The findings of fact and of law by the court are given in the opinion.

Plaintiffs excepted to the conclusions of law in holding that County Courts of counties on the border were without authority to license or regulate ferries over national boundary streams partially in their counties; that license for such ferries issued by them was without authority of law; that the State had such control but had not delegated it; and that the restraint by injunction was wrongful.

To the court's holding that defendant's incorporation under the general law after accrual of plaintiff's rights, vested defendant with privileges which entitled it to damages from the operation of the injunction.

*J. A. Ware,* for appellants.—The Act of 1850 (Rev. Stats., arts. 4437–39) makes no reservation in conferring the control of ferries on the County Commissioners Courts, but evidently was intended to transfer to those tribunals all the powers of the State on the subject. The extension of powers contained in article 4438, so far from being a limitation of their control, is an extension of their power of taxation beyond the limitation of that right, as in the case of ferries entirely within the State. Ferry privileges are necessarily in their nature exclusive for the reason that the pre-

vailing consideration in their licensing is the public accommodation, and whether expressly made so by the grant or not, may be practically made so by the exercise of the discretion vested in the County Commissioners Court, a discretion not revisable in this mode in the District Court.    If plaintiffs had a licensed ferry—however the court may have exceeded its authority in the conditions and terms accompanying it, or in the process upon which the court's action may have been predicated—they were entitled to operate their ferry free from unlawful interference or competition; and any interference or competition was unlawful which was attempted without lawful license and a compliance with provisions of the law made for the protection of the public, and rivals who had complied with the law.

Defendants, in the exercise of the discretion of the court, had been denied license, had entered into no bond, had legal existence only after accrual of plaintiffs' rights, and without such license were engaged in a damaging interference or competition with plaintiffs, which constituted a nuisance, and might be enjoined at instance of the injured party.

Their claim to ferry rights by reason of their incorporation is inconsistent with our ferry law and the general theory and spirit of our law. Our law says all ferries, whether operated by individuals or corporations, must comply with the provisions regulating ferries, and must have County Court sanction for their ferries.    The law authorizing their incorporation was only intended to legalize their association, and authorize them to acquire privileges by compliance with the laws regulating the subject matter, the same as an individual.    And where rights are vested in an individual the law could not have meant that others could appropriate them simply by voluntary association for the purpose without due process of law and without compensation.

Defendants operating a ferry without saction of law, and in violation of and defiance of its mandate, can not "have the law and facts so with them" in an effort to enforce the law for its violation, as said by the court, as to have entitled them to a dissolution of the injunction and damages for rights they never legally held, but they are liable as in article 4450 of Revised Statutes.    The charter under which they claim exclusive privileges for certain distances was invalid for want of specific designation of locality—it might extend six miles or twenty.

The opinion in Ogden v. Lund, 11 Texas, 689, that the statute of 1850 was inoperative with regard to streams that were national boundaries, except in so far as it provided a system of reciprocity, was *obiter dictum*, and if the court could take cognizance of it in reciprocity the presumption is in this collateral proceeding that the action of the court was based on that ground, particularly as the proof shows it existed.    Rev. Stats., arts. 4437–39, 4443, 4445, 4550, 3454; Hudson v. Cuero L. & E. Co., 47

Texas, 69; City of Laredo v. Martin, 52 Texas, 560; Charles River Bridge Co. v. Warren Bridge Co., 11 Pet., 539 (opinion of McLean, J., pp. 556, 561, 567); Bouv. Law. Dic., p. —, citing 11 Wendell, 586; 16 B. Monr., 699; Stark v. McGowan, 1 Nott & McC., 387; 8 Bacon's Abv., 114; 2 Kent, part 6, secs. 2, 4; 1 U. S. Am. Dig., 1847, p. 275; Mills v. Co. St. Clair, 1 La. Ann., 288; Cool. Const. Lim., 696.

*John H. Clark* and *Robertson & Williams,* for appellee. — 1. Appellee having averred in its pleadings and fully proved the continuous and uninterrupted use and occupation of a ferry across the Rio Grande, at the point where appellee's ferry was being operated when the injunction in this case was served upon it, for a period of twelve or more years preceding the commencement of this suit by appellee and by its assignors, whose rights and privileges it holds, said ferry having been so used and operated without opposition and by the sufferance and consent of the County Commissioners Court of Maverick County, and appellee having applied to said Commissioners Court for a license to run and operate said ferry, and having tendered to said Commissioners Court the sum of one hundred dollars for such license, which license said Commissioners Court refused to grant, did thereby and by reason of its due organization as a private corporation under the laws of the State of Texas acquire the right to operate and maintain such ferry privileges, notwithstanding the pretended exclusive grant made to appellants by the said Commissioners Court of Maverick County.   Rev. Stats., arts. 565, 566 (as amended by Act of March 27, 1885, Gen. Laws 19th Leg., p. 59, par. 10), 642, 4436–38, 4454, 4455; Ogden v. Lund, 11 Texas, 688; Butt v. Colbert, 24 Texas, 355; Dunlap v. Yoakum, 18 Texas, 582; Hudson v. Cuero L. & E. Co., 47 Texas, 57; Laredo v. Martin, 52 Texas, 559; Macdonnell v. Railway, 60 Texas, 595; Brenham v. Water Co., 67 Texas, 542; Charles River Bridge v. Warren Bridge, 11 Pet., 420; Fanning v. Gregoire, 16 How., 524; Wright v. Nagle, 11 Otto, 791; Ferry Co. v. Pennsylvania, 114 U. S., 196; Dyer v. Bridge Co., 27 Am. Dec., 655.

2.   Appellee having organized as a private corporation for the purpose of operating and maintaining a ferry under the general laws of the State of Texas regulating ferry corporations, had the right to maintain and operate a ferry across the Rio Grande at the point where its ferry was established without the license or consent of the Commissioners Court of Maverick County.   Rev. Stats., arts. 565, 566 (Gen. Laws 1885, p. 59, par. 10, under which appellee obtained its charter), 642, 4436, 4437, 4438, 4439, 4454, 4455; Hudson v. Cuero L. & E. Co., 47 Texas, 57; Charles River Bridge v. Warren Bridge, 11 Pet., 420; Fanning v. Gregoire, 16 How., 524; Wright v. Nagle, 11 Otto, 791; Minturn v. Larue, 23 How., 435; 1 Dill. Mun. Corp., sec. 114, and note.

3.   The grant to appellants by the Commissioners Court of Maverick

County of an exclusive ferry privilege between Eagle Pass and Piedras Negras for the term of one year, and the contract between appellants and the Commissioners Court of Maverick County, created a monopoly, and was in violation of section 26, article 1, of the Constitution of the State of Texas. Const., sec. 26, art. 1; Macdonnell v. Ry. Co., 60 Texas, 596; Brenham v. Water Co., 67 Texas, 542; Chicago v. Rumpf, 45 Ill., 90; Logan v. Payne, 43 Iowa, 524.

4. The Rio Grande being a boundary of the State of Texas and lying · between the United States and the Republic of Mexico, the Commissioners Court of Maverick County had no power or authority to establish or license any ferry across it. Rev. Stats., art. 4438; Ogden v. Lund, 11 Texas, 688; Ferry Co. v. Pennsylvania, 114 U. S., 196.

5. ˙ Commissioners Courts are not authorized by law to grant exclusive ferry privileges, and have no authority or power to establish ferries not upon public highways, and no authority to sell ferry licenses, franchises, and privileges to the highest bidder, under contract to grant no other such license, franchise, or privilege at any point which will be in competition with the ferry established by such successful bidder. Rev. Stats., 4436–38, 4455, 565, 642; Gen. Laws 1885, p. 59, par. 10; Charles River Bridge v. Warren Bridge, 11 Pet., 420; Fanning v. Gregoire, 16 How., 524; Minturn v. Larue, 23 How., 435; Wright v. Nagle, 11 Otto, 791; Ferry Co. v. Pennsylvania, 114 U. S., 196; 1 Dill. Mun. Corp., sec. 114, and note; Dyer v. Bridge Co., 27 Am. Dec., 655.

Appellants base their suit wholly upon their claim to the ownership of an exclusive ferry privilege across the Rio Grande between the town of Eagle Pass in the State of Texas and the town of Piedras Negras in the Republic of Mexico, under the grant to them from the Commissioners Court of Maverick County, Texas. If there was legally vested in appellants when this suit was brought the exclusive right and privilege of operating and "maintaining a ferry and running ferry boats between said towns," then appellee in establishing its ferry across the same river and between the same towns, although interfering with appellants only by competition, should have been enjoined. But if there had not been legally conferred upon appellants such exclusive right and privilege as they claimed, then appellee was wrongfully enjoined and entitled to recover damages therefor. Laredo v. Martin, 52 Texas, 559, 560.

The cases in which Commissioners Courts shall have the right to establish and license or tax ferries are enumerated in articles 4437, 4438, and 4455, Revised Statutes, and these articles are the foundation of their power. Article 4437 provides that no person shall keep a ferry for hire "without first procuring a license from the Commissioners Court of the county in which such ferry is situated." Article 4438 provides that the privilege of a ferry landing within the State upon a water-course forming part of its boundary may be taxed and charged for as is the like privilege

in the adjoining State.   While article 4455 provides which county shall issue the license and receive the compensation for operating a ferry across a stream which forms a boundary line between two counties.

It is clearly intended in these three articles to provide for three different relative positions of the stream across which a ferry is to be operated. Article 4437 fixes the mode of procedure and the power of Commissioners Courts in all cases where a ferry is to be operated between two points within the same county, and in no other case.   Article 4455 provides for those cases in which ferries are to be operated across streams forming the boundary line between two counties.   While article 4438 provides that where a ferry is to be operated across a stream which is part of the boundary of this State, such tax or charge and no other may be collected as is collected in the adjoining State.

Appellants and appellee were when this suit was brought operating ferries across the Rio Grande, which is a boundary stream of the State of Texas, and forms the dividing line between the State of Texas and the Republic of Mexico.   Their boats landed upon the one side at Eagle Pass, in the State of Texas, and upon the other at Piedras Negras, within the territory of a foreign government.   Whatever power the Commissioners Court of Maverick County had over the operation of these ferries is derived solely from article 4438, Revised Statutes, and this power is limited by the terms of said article to the collection of such tax or charge as shall be collected by the adjoining State, and this is to be collected not as a ferry license but for the privilege of landing on the shore in this State.

As was held in Ogden v. Lund, 11 Texas, 690, "the third section of the Act of January 23, 1850," which is identical with article 4438, Revised Statutes, "makes a provision for ferries on rivers forming the boundary of this State.   It provides for a system of reciprocity.   And this is all that can be done in such cases.   Any attempt to give a privilege or franchise beyond the jurisdiction of the State would be void." The grant to appellants was without authority of law and void.   See also Butt v. Colbert, 24 Texas, 355, taken in connection with the rule of pleading laid down in Dunlap v. Yoakum, 18 Texas, 584.

Article 565, Revised Statutes, provides for the creation of private corporations for certain purposes specified in the succeeding article.   The tenth paragraph of the amendment of this article, in force at the time appellee procured its charter (Gen. Laws 1885, p. 59), provided that a corporation could be created for the purpose of establishing and maintaining a ferry.   Article 642, Revised Statutes, provided that upon the creation of such private ferry corporation it should be entitled to exclusive rights for a certain distance up and down stream; provided, "that this article shall not be so construed as to prohibit bridges and ferries at the crossing of any road upon such stream within such limits declared either before or after the erection of such ferry to be a public road by

the Commissioners Court of the county in which such crossing is sit--uated." Article 643 gives to the Commissioners Court of the county in which such ferry is situated power to regulate the toll to be charged.

Appellee submits that the only true construction which can be put upon these various articles is that they confer upon the Commissioners Courts the power to establish ferries upon public highways across streams. wholly within the State, as the public necessity may require, and authorize the operation at other places by private corporations created according to law of ferries not subject to control by the Commissioners Courts except as to the amount of toll to be charged.

In Hudson v. Cuero Land and Emigration Company the Legislature of Texas had granted to the appellant and others a franchise for the con--struction of a toll bridge over the Guadalupe River at the town of Clinton, in De Witt County, and it was held that the act granting the special charter operated as a repeal or limitation *pro tanto* of the general pow--ers conferred upon County Courts to establish ferries. 47 Texas, 57.

Power to a municipal corporation to establish and regulate ferries. within its limits does not give it an exclusive power, and does not author--ize it to confer an exclusive ferry privilege upon others. 1 Dill. on Mun. Corp., sec. 114, and note; Minturn v. Larue, 23 How., 435; Fanning v.. Gregoire, 16 How., 524.

In Wright v. Nagle, 11 Otto, 791, the Inferior Court of Floyd County,. Georgia, had granted to Wright's assignor, as far as it had the authority for that purpose, the exclusive right of opening ferries and building bridges across certain streams in that county within specified limits. Its. authority to make such grant was based upon an act of the Legislature· of Georgia empowering the Inferior Courts in the several counties of the State, if they shall deem it necessary, to authorize the establishment of ferries and bridges where none have already been established. The va--lidity of the grant was questioned, and the Supreme Court of the United States held that exclusive rights to public franchises are not favored, and that every statute which takes away from the Legislature its power will always be construed most strongly in favor of the State, and that the In-ferior Court had no right to make the grant in question. The court say:. "The question here is, whether the Legislature of Georgia conferred on the Inferior Courts in its several counties the power of contracting away the rights of the State to establish such ferries and bridges in a particular locality as the ever changing wants of the public should in the progress of time require. In our opinion it did not. It gave these courts the right to establish ferries or bridges, but not to tie the hands of the public in respect to its future necessities."

Applying the principles laid down to the case before us we find that the laws of this State do not in express terms give to Commissioners Courts the right to grant exclusive ferry privileges, but on the contrary

they expressly reserve to the State the right to grant such franchises without restriction, and that under the laws the power of Commissioners Courts to establish ferries is in no sense or manner exclusive.

The contract and grant which appellants claim conveys to them the exclusive right to operate a ferry across the Rio Grande from Eagle Pass to Piedras Negras convey to appellants "all the right, title, interest, and privileges in and to the ferry across the Rio Grande at Eagle Pass, Texas, that said Maverick County under the law may be entitled to," the Commissioners Court covenanting and agreeing "not to lease or quit claim said ferry rights and privileges or to issue license therefor to any other person or persons whatsoever during the term of one year" from July 1, 1886. In Brenham v. Water Company, 67 Texas, 561, the court say: "A grant which gives to one or an association of persons an exclusive right to buy, sell, make, or use a given thing or commodity or pursue a given employment, creates a monopoly." And again: "The right to exercise an exclusive privilege need not extend to all places; it is enough that it operate in and to the hurt of one community." "It need not continue indefinitely so as to amount to a perpetuity; it is enough that it be an exclusive privilege for the period of time of the character forbidden."

Appellants, if they secured the right upon which they base their suit, to-wit, the exclusive right to operate a ferry across the Rio Grande at Eagle Pass for the term of one year, secured a monopoly of the character forbidden by section 26, article 1, of the Constitution of Texas.

Appellee's ferry from Eagle Pass to Piedras Negras was a necessary means of commercial intercourse between the United States and Mexico, and as such is protected under the Constitution of the United States in its operation, without the imposition upon it by the Commissioners Court of Maverick County of burdens, restrictions, and prohibitions under the pretended authority of the laws of Texas.  Ferry Co. v. Pennsylvania, 114 U. S., 196.

Appellee respectfully submits to the court that the pretended grant to appellants of the exclusive ferry privilege which it claims was without authority of law and contrary to law; that the County of Maverick had no ferry rights across the Rio Grande and could sell none; that the conveyance under which appellants claim did not purport to and could not convey rights which were not owned by Maverick County or its Commissioners Court, and that appellants acquired thereby no such exclusive ferry privileges as they claim, and had no lawful right to interfere with and obtain an injunction against the operation of appellee's ferry, and that the judgment of the court below should be affirmed.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellants, a ferry company, to enjoin appellee, a ferry corporation, from operating a ferry boat across the Rio Grande between Eagle Pass, Texas, and Pie-

dras Negras, in Mexico. The plaintiffs claimed an exclusive right to operate a ferry between the towns named by virtue of a license granted to them by the Commissioners Court of Maverick County in June, 1886.

The defendant company in its answer claimed its right to maintain a ferry between the points designated, first, by virtue of its incorporation as a ferry company under the general laws of the State on the 7th of July, 1885, and secondly, by prescription. Its charter was for the express pur-pose of operating a ferry between Eagle Pass and Piedras Negras. It also alleged that it had tendered to the Commissioners Court $100 for a license, and that the court had refused to grant it. By order of the judge of the District Court for that judicial district a bond was given and an injunction sued out, but upon final hearing the injunction was dissolved and a judgment rendered for damages in favor of defendant against plaintiffs, and against the sureties on the original bond, and also against the sureties upon an additional bond given by order of the court during the progress of the cause.

The case was submitted to the judge without a jury, who filed the following conclusions of fact:

"1. That the proceedings had between the County Commissioners Court of Maverick County and A. P. Tugwell relative to a grant of ferry privilege between Eagle Pass and Piedras Negras was intended to be and was in effect an excluse license to the said Tugwell to land a ferry at the Eagle Pass bank of the Rio Grande, and that defendant had no license therefor.

"2. That said river over which this ferry was to operate is a bound-ary water-course between the United States and the Republic of Mexico.

"3. That the defendant (appellee) was operating a rival ferry between said towns after the license had been granted to said Tugwell, and con-tinued to interfere with said A. P. Tugwell's ferry for four days, when the latter and his partner Madison sued out this injunction.

"4. That the facts fail to show a prescriptive right in either party to exclusive ferry privileges between said towns."

As applicable to the facts so found the court concluded the law to be:

"1. That the statutes of Texas do not authorize the County Commis-sioners Court of a county to establish or license ferries over boundary streams such as the Rio Grande.

"2. That article 4438 of the Revised Statutes does not confer such authority.

"3. That in the absence of statutory authority the County Commis-sioners Court of Maverick County have no power to grant exclusive license to any person to operate a ferry on said river.

"4. That the injunction was improperly sued out and should be dis-solved and actual damages awarded the defendant."

The findings of fact are supported by the evidence. The only con-

troverted issue found by the judge is as to the prescriptive right of the defendant corporation, and we think the evidence wholly insufficient to show such right.

But we do not concur in the conclusions of law. It is true that article 4438 of the Revised Statutes does not confer authority upon the Commissioners Courts to establish ferries across a stream "which makes a part of the boundary line of this State," and indeed we may look in vain in the entire chapter upon the subject of ferries from which this article is taken to find any express authority for granting ferry licenses to any persons except the owners of the land fronting upon the streams, lakes, or bays in the State, except in cases where the owners of ferries shall refuse to keep the same at the rates allowed by the Commissioners Court. Rev. Stats., art. 4442.

Yet no one is permitted to keep a public ferry and charge fees without obtaining a license from the court and giving bond as required by the statute. Rev. Stats., art. 4450.

To keep a ferry and to receive anything of value for crossing persons or property without first obtaining license, as is required by law, is made punishable by the Penal Code. Pen. Code, art. 415.

It was certainly not intended that the important matter of the establishment of public ferries should be left to the caprice of those who might perchance own the land at the points at which the public convenience might require them. This seeming difficulty is removed by reference to article 1514 of the Revised Statutes, which defines the powers of the Commissioners Courts. They are there given authority "to establish public ferries whenever the public interest may require it." The grant is as full as the Legislature can make it. Chapter 6, title 87, of the Revised Statutes contains merely the regulations of the power delegated to these courts. Article 4439 provides that any person wishing to establish a ferry shall apply to the Commissioners Court, and shall show that he is the owner of the land on which the ferry is sought to be established. It is said that the statutes merely give a preference to the land owner. Hudson v. Cuero Co., 47 Texas, 56.

And we incline to the opinion that this right of preference does not exist at points where public roads have been established across the streams of the State. In acquiring the right of a public road along any designated route, by condemnation or otherwise, it would seem the public acquires the right to use such means as are necessary and proper for the ordinary purposes of travel. This is indicated by article 4436, which contains the provision that should the owner of the land upon one bank of the stream be unable to get the consent of the owner of the land on the opposite bank, he may establish his ferry by procuring an order of the court to lay out a public road from such opposite bank. These considerations impel us to the conclusion that the Revised Statutes confer upon the Com-

missioners Courts the power to license public ferries in their respective counties in all cases except in those instances where the Legislature has specially granted the privilege of establishing a ferry to some person or persons or some municipal body.

But the question arises, has the State the right to grant a franchise for a ferry across a stream which constitutes a boundary between it and another State or between it and a foreign nation? The answer to this is, that it has the right as far as its territory extends—that is in ordinary cases to the middle of the stream. This principle is distinctly announced by the Supreme Court of the United States in Conway v. Taylor's Executor, 1 Black, 603. It is held in that case that the power to establish ferries is coextensive with the legislative jurisdiction of the State, and that an exercise of this power over a stream which is the boundary of a State does not infringe that provision of the Constitution of the United States which gives the Congress power to regulate commerce between the States and with foreign nations. See also Marshall v. Grimes, 41 Miss., 27; People v. Babcock, 11 Wend., 586; Columbia D. B. Co. v. Geisse, 38 N. J. Law, 39; Memphis v. Overton, 3 Yerg., 387.

In The People v. Babcock, *supra,* in speaking of the jurisdiction of the State of New York over the Niagara River the court say: "So far as jurisdiction is concerned it is as complete over this river to the center thereof as over any other stream in the country. The privilege of the license may not be as valuable to the grantee by not extending across the river, but as far as it does extend it is entitled to all the provisions of the law, the object of which is to secure the exclusive privilege of maintaining a ferry at a designated place."

The cases cited above are decisive of the question. That relied upon by counsel for appellee (Gloucester Ferry Co. v. Pennsylvania, 114 U. S., 196) is not in point. It was there held that the property of a ferry company chartered by the State of New Jersey to operate a ferry across the Delaware River between the town of Gloucester, in New Jersey, and the city of Philadelphia, which was merely used in the transportation of passengers and freight, and which was not owned in the State of Pennsylvania, could not be taxed by the latter State. Speaking of the company's freedom from the imposition of such taxes the court say: "Freedom from such impositions does not of course imply exemption from reasonable charges as compensation from the carriage of persons in the way of tolls and fares, or from ordinary taxation to which other property is subjected, any more than like freedom of transportation upon land implies such exemption." The right of neither State to establish ferries upon the river was involved in the decision of the case, and the court further say that "the question therefore respecting the tax in the present case is not complicated by any act of that State (meaning Pennsylvania) concerning ferries."

In Ogden v. Lund, 11 Texas, 688, Judge Lipscomb says: "The manner in which ferries are to be established on water courses forming county boundaries has been defined, but there has been no legislation upon the subject where the river is a national boundary, and consequently no authority given to the County Court to establish a ferry on such streams. * * * The third section of the Act of January 23, 1850, makes a provision for ferries on rivers forming the boundaries of the State, but this act being subsequent to the injuries for which this suit is brought can have no influence. It provides for a system of reciprocity, and this is all that can be done in such cases by legislation. Any attempt to give a privilege or franchise beyond the jurisdiction of the State would be void."

The opinion itself shows that these remarks are mere dicta. The political jurisdiction of the State extends to its boundary, which by article 5 of the treaty of Guadaloupe-Hidalgo is fixed on the west at the middle of the Rio Grande. 9 U. S. Stats. at Large, 926. The Commissioners Courts then as now had power to establish ferries, and the authorities we have cited show that the State had the same authority over such parts of the streams which formed its boundaries as were within its political jurisdiction as it had over streams entirely within its borders. To hold that the Commissioners Courts have no authority to license ferries on the Rio Grande would be to deprive the public of the convenience of public ferries on that stream, because as we have shown it is a penal offense to take toll for ferriage without first procuring a license therefor.

The third section of the Act of 1850 (now article 4438 of the Revised Statutes) we think provides for a system of retaliation rather than of reciprocity, and in our opinion its validity may be seriously doubted. Ferry Company v. Pennsylvania, *supra.* It was evidently not intended to provide either for the establishment or regulation of ferries.

It follows from what we have said that in our opinion when appellants procured their license from the Commissioners Court of the county they acquired the right to operate a ferry as far as the political jurisdiction of the State extended—that is, to the middle of the river. Beyond this the court had no power, and further it should have had no concern. Its grant is good as far as its power extended.

It becomes important then to inquire by what right the appellee claims a ferry privilege. The court properly found that it had not shown a right by prescription. It is claimed however that by virtue of its incorporation under the general laws of the State (Rev. Stats., arts. 642, *et seq.*), with power to operate a ferry between Eagle Pass and Piedras Negras, it acquired the right to exercise the ferry privileges claimed by it. But we think this claim is based upon a misapprehension of the scope and effect of our general incorporation laws. Their object is simply to enable individuals to associate themselves together with the powers, privileges, and

incidents of a corporation for the promotion of certain purposes. So far as they relate to ferries they merely provide a mode by which a corporation may be created for the purpose of maintaining a public ferry. The franchise they grant is the power as a corporation by acquiring another franchise—namely, a ferry privilege—to operate and maintain a public ferry. After the incorporation is completed the corporation has the same right to acquire a ferry property and privilege, and no more. It was certainly not intended to enable any number of individuals by the mere fact of filing articles of incorporation as required by the statute to acquire a ferry privilege itself at any point that should be designated in such articles. This construction is inconsistent with our civil and criminal statutes upon the same subject. The Secretary of State has no discretion when applied to to file a charter prepared as required by the law. But there should be some officer or tribunal to whom is confided the important function of deciding whether the right to operate a public ferry should be granted or not when application is made therefor. This jurisdiction in our opinion is conferred by our laws upon the Commissioners Courts of their respective counties, and we think their action is not subject to review in a collateral attack. Haynes v. Wells, 26 Ark., 4041.

The Commissioners Court of Maverick County refused appellee's application for a license, whether correctly or not we need not inquire; nor need we decide whether they exceeded their authority in attempting to grant to appellants an exclusive privilege. Appellants have the only license, and appellee at the time the injunction was sued out was operating a ferry in competition with appellants' ferry and in violation of the law. Upon the conclusions of fact found by the court, the injunction should have been perpetuated on the final hearing.

The judgment will be accordingly reversed and here rendered for appellants.

*Reversed and rendered.*

Delivered June 18, 1888.

Motion for rehearing argued by *John H. Clark* and *Robertson & Williams.*

GAINES, ASSOCIATE JUSTICE.—It is urged upon the motion for a rehearing in this case that because the plaintiffs set up in their petition that they had acquired an exclusive ferry privilege from the Commissioners Court of Maverick County they were not entitled to the relief sought unless their exclusive right was established, and it is claimed that it is therefore necessary for this court to pass upon the question presented in appellee's brief of the power of the Commissioners Court to grant such exclusive franchise. Such is not our view of the question. It appears, it is true, that the Commissioners Court undertook to grant the appellant Tugwell

an exclusive right to operate a ferry across the Rio Grande at Eagle Pass. It is none the less true that the court did grant a license as the statute requires upon the payment of a stipulated fee therefor. The license recited that the bond had been given, and in the absence of proof to the contrary the presumption is that this was the bond required by the statute. Conceding, therefore, that the court undertook to grant more than it had the power to grant, it does not follow that the grant was not good to the extent of its power; nor does the fact that they exacted a tax for the license greater than the limit fixed by the statute operate to defeat the grant. The overcharge worked an injury to no one but appellants. The court would not be permitted to say, we have charged you too much for your privilege and it is therefore void. We are far from saying that the action of the court was regular or in accordance with the law, but we do say that it had the power to grant a license, and that it did grant the franchise which gave the appellants the privilege of operating a ferry across the river at Eagle Pass. The appellee had no license.

The legal question then presents itself, is the grantee of a ferry privilege entitled to an injunction against one who having no license undertakes to operate another ferry in competition with that which is licensed? In the former opinion this question was decided in the affirmative, and that decision is sustained by authority. Smith v. Hawkins, 3 Ire. Eq., 618; Stark v. McGowan, 1 Nott & McC., 387; McRoberts v. Washburne, 10 Minn., 23; The Broadway Ferry Co. v. Hankey, 31 Md., 346; East Hartford v. Bridge Co., 10 How., 511; 3 Blacks. Com., 219.

It is not necessary that the grant should exclude the power to grant a license for another ferry. It is sufficient that no such second license has in fact been granted. The operation of an unlicensed ferry is unlawful, and a licensee is entitled to protection against a competition carried on in violation of law.

The plaintiffs alleged fully in their petition and claimed that they acquired thereby an exclusive ferry privilege. The facts alleged and proved show that they have a license to operate a ferry and that defendants have none. Whether the Commissioners Court had the right to grant an exclusive privilege or not, the plaintiffs were entitled to show and have shown under the allegations in their petition that they acquired a lawful ferry franchise, and that defendant was operating a competing ferry without authority of law. This entitled them to the injunction prayed for. Though they may not have established their right to the full extent claimed, they established a sufficient right for the purposes of their suit.

It is further insisted that the court misconceived the scope and effect of the decision in the case of The Ferry Company v. Pennsylvania, 114 United States, 196. It is claimed that properly considered it overrules the case of Conway v. Taylor, 1 Black, 603, cited by us in support of

.the conclusion that the State has the power to grant a license to operate a ferry across a stream which constitutes its boundary. Having again ·carefully examined the opinions in the two cases we find no ground for this assumption. In The Ferry Company v. Pennsylvania, *supra*, Mr. Justice Field, who delivered the opinion of the court, in speaking of ferries "over waters separating" the States, concedes "that the privilege of keeping a ferry with a right to take toll for passengers and freight is a franchise grantable by the State, to be exercised within such limits and under such regulations as may be required for the safety, comfort, and convenience of the public." 114 U. S., 217. If the establishment of a ferry over a river separating two States is not an interference with interstate commerce the establishment of one over a boundary between the State and a foreign country is not an interference with foreign commerce, and it follows that the establishment of such ferries is a matter within the jurisdiction of the States respectively and not of the Congress of the United States. We conclude that the decision in Conway v. Taylor is not overruled, either expressly or by implication, and that it is decisive of the question in support of which it was cited.

The motion for a new hearing is overruled.

*Motion overruled.*

Delivered October 30, 1888.