## COLEMAN GAS & OIL CO. v. SANTA ANNA GAS CO.*

### No. 7851; and Motion No. 7477.

Court of Civil Appeals of Texas. Austin.
Jan. 25, 1933.

Rehearing Denied March 22, 1933.

Critz & Woodward, of Coleman, for appellant.

Woodruff & Holloway, of Brownwood, for appellee.

McCLENDON, Chief Justice.

Appeal from a judgment in favor of Santa Anna Company, appellee, enjoining Coleman Company, appellant, from violating an ordinance of the Santa Anna city commission fixing specific rates for sale of natural gas to domestic and commercial consumers.

The grounds for reversal urged by Coleman Company are:

1. That the city was a necessary party to a suit to enjoin violation of the ordinance.

2. That the ordinance violated the due process of law and obligations of contract provisions of the Federal and State Constitutions (Const. U. S. Amend. 14; and art. 1, § 10; Const. Tex. art. 1, §§ 16, 19), in that the Coleman Company was the owner of a franchise, granted by the city in 1912, which fixed the rates (lower than those in the ordinance) it was charging.

*Writ of error granted.

3. That it had the right to disregard the ordinance and to test its validity in this proceeding because it had no right of appeal from the ordinance.

4. That since the field was limited, and the patronage sufficient to support only one of the two competing utilities, it had the inalienable right to engage in "cut-throat competition," and thereby to drive its competitor from the field.

We will refer to these grounds by number.

■ First Ground. Santa Anna Company as a competitor of Coleman Company had the legal right to enjoin disobedience of the rate ordinance. Tugwell v. Ferry Co., 74 Tex. 480, 9 S. W. 120, 13 S. W. 654; Lindsley v. Ry. Co. (Tex. Civ. App.) 200 S. W. 207; Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N. E. 739, 18 A. L. R. 929; McQuillan Mun. Corp. (2d Ed.) § 1915.

■■ Since the suit did not bring in question the validity of the ordinance, but merely sought to enforce it as enacted, the city was not a necessary party. The authorities cited by appellant (32 C. J. p. 299, § 480, note 55; 47 C. J. pp. 73, 81, notes 61, 83; In re Engelhard & Sons Co., 231 U. S. 646, 34 S. Ct. 258, 58 L. Ed. 416) do not sustain its contention. In the Engelhard Case it was held that the city was the representative of the public in an action against it by a utility to enjoin enforcement of municipally imposed rates, and that the trial court did not abuse its discretion in refusing permission of a consumer, as representing a class, to intervene upon the theory that the city might not diligently prosecute the suit. We can see no reason for making the city a party to a suit brought by an individual to enforce his rights under a city ordinance. In a direct attack upon the ordinance the city would be a necessary party. Engelhard Case, above. Unless absolutely void, the ordinance could not be attacked collaterally, as the Coleman Company is attempting to do in this case. It seems to us that the only theory upon which the city would be a necessary party would be that the defenses urged by the Coleman Company constituted a direct attack upon the ordinance, in which event it would be incumbent upon it to make the city a party. The city has the right to enforce the ordinance, in its capacity as representative of the public interest. But we cannot see that it was a necessary party to a suit by a competing utility to prevent infringement of its rights through disobedience of the ordinance. No authority to that effect has been cited. Necessary parties are those whose interest in the subject-matter is of such a nature that final decree cannot be entered without affecting their interests. Wilson v. Imp. Dist. (Tex. Civ. App.) 256 S. W. 346.

■ Second Ground. The making of rates to operate prospectively is a legislative function, Missouri-Kansas & T. R. Co. v. Railroad Comm. (Tex. Civ. App.) 3 S.W.(2d) 489; Producers' Refining Co. v. Missouri, K. & T. R. Co. (Tex. Com. App.) 13 S.W.(2d) 679; and when delegated to a municipality cannot be bartered away, City of Uvalde v. Uvalde Electric & Ice Co. (Tex. Com. App.) 250 S. W. 140.

■ Appellant contends that the rates named in its franchise constituted a valid contract with the city because the latter did not have the rate making power at the time (1912) the franchise was granted. It cannot be questioned that the rate-making power inhered in the Legislature; and certainly it cannot successfully be maintained that the city could barter away a right which inhered in the Legislature, when it could not have bartered away such right if it had then been delegated to it by the Legislature. The power of the Legislature was unimpaired by any action of the city, and when that power was later delegated to the city, it was in like manner unimpaired.

We have considered this subject upon the assumption that the franchise rate was an attempted contractual obligation. It is unnecessary to determine the correctness of this assumption.

■ Third Ground. The city passed the rate ordinance originally on August 6, 1931. The Coleman Company applied to the city on August 26, 1931, for permission to reduce its rates to those specified in its franchise. October 23, 1931, the city denied this application and re-enacted the August 6th rates. No appeal was taken from this action.

Appellant contends that R. S. art. 6058, gives the right of appeal to utilities only where the city "has ordered any existing rate reduced." This contention is predicated upon the wording of the first sentence of the article. Further along the article provides: "Whenever any local distributing company or concern, whose rates have been fixed by any municipal government, desires a change of any of its rates, rentals or charges, it shall make its application to the municipal government where such utility is located and such municipal government shall determine said application within sixty days after presentation unless the determination thereof may be longer deferred by agreement. If the municipal government should reject such application, or fail or refuse to act on it within said sixty days, then the utility may appeal to the Commission as herein provided." This language is too plain to call for construction.

The Coleman Company laid a predicate, under the express authority of this provision, to appeal from the city's action. This, however, it did not do; but proceeded to disregard the ordinance, and the Santa Anna Company sought relief by the instant proceeding.

Article 6059 gives the right of review of

the commission's orders by suit "in a court of competent jurisdiction in Travis County."

In Community Natural Gas Co. v. Natural Gas & Fuel Co., 34 S.W.(2d) 900, we held in effect that this remedy was exclusive, and that the only power of the courts was to give temporary relief, pending resort to the prescribed procedure. No considerations have been advanced which, in our opinion, impair the soundness of that holding. The equity powers of the courts are not properly invoked so long as adequate statutory remedies have not been exhausted.

Fourth Ground. This ground is predicated upon the majority holding in Great Northern U. Co. v. Pub. Serv. Comm. (D. C.) 52 F.(2d) 802, 805, which is thus tersely stated in the majority opinion: "When the state launches two upon the sea of competition, and the plank of patronage will support but one, it cannot in reason deny them the right of necessity to fight to a finish for financial life, even as may two castaways at sea battle to the death for the spar which will support but one, without any wrong to the survivor attaching." This holding was by a three-judge Federal District Court in Montana, sitting in an application for a temporary injunction restraining the Montana Public Service Commission from putting in effect a rate order. The majority opinion is concurred in by two District Judges. At the time it was handed down the Circuit Judge (the third judge sitting) "decided to dissent on the ground that I regarded the order as well as the statute valid." He later concurred in the order, but upon an entirely different ground from that announced in the majority opinion, namely:

"A public service commission has the power, under the Federal Constitution, to fix a precise rate that will mark both the maximum and the minimum range of a public utility's rates. But, when a commission undertakes to do this, it must see to it that the rate thus fixed will give to the utility company 'a fair return upon a fair value' of the company's property.

"Since the commission in the instant case avowedly did not do this, I concur in the decree granting an injunction to prevent the commission from putting the order complained of into effect."

The principles applied in the concurring opinion are of unquestioned soundness; and it is interesting to note that the opinion makes no allusion whatever to the holding of the majority.

In a per curiam opinion the Supreme Court of the United States affirmed the order in the following language: "The order granting interlocutory injunction is affirmed, without prejudice to the consideration and determination at final hearing of all questions of law and fact, including the question of the reasonableness, in the circumstances disclosed of the order which is the subject of the suit. Alabama v. United States, 279 U. S. 229, 230, 231, 73 L. Ed. 675–677, 49 S. Ct. 266." Public Service Commission v. Great Northern Utilities Co., 285 U. S. 524, 52 S. Ct. 313, 76 L. Ed. page 921.

The holding in the cited case follows: "It is well established doctrine that an application for an interlocutory injunction is addressed to the sound discretion of the trial court; and that an order either granting or denying such an injunction will not be disturbed by an appellate court unless the discretion was improvidently exercised." Alabama v. United States, 279 U. S. 229, 49 S. Ct. 266, 73 L. Ed. page 677.

The majority holding in the Montana case appears to be sui generis in the annals of American Jurisprudence. This the opinion thus concedes: "This case is somewhat unique in that, believe it or not, plaintiff resists defendant's order to raise its rates. But if madness seems, is method in it, the object, cut-throat competition to a finish anticipated of a rival so lost to ethics as to poach upon plaintiff's preserves and underbid it, its attitude that, in a restricted field wherein both cannot survive, if it must perish, it will die fighting rather than by slow starvation; and that it has an inalienable right of self-preservation to lay on until the other first cries, 'Hold, enough,' and flees the field whether or not damned."

The only citations to the Montana case which we have discovered are Texas Electric Service Co. v. City of Seymour (D. C.) 54 F.(2d) 97 (by the Federal District Judge, Northern District of Texas), and City of Farmersville v. Texas-Louisiana Power Co. (by the Dallas Court of Civil Appeals) 55 S.W.(2d) 195, 200. The Seymour Case cites the Montana case with apparent approval. However, the opinion appears to be rested upon the holding that the city commission was disqualified as a rate-making body, because one of the competing utilities was municipally owned. Whether the learned District Judge intended to concur in the majority holding in the Montana case is not clear; especially when considered in the light of his reference to the concurring opinion.

In a very able opinion by Judge Looney in the Farmersville Case, he discusses the principles governing municipal rate making, and the conclusions he reaches are in accord with ours herein. He cites with approval the above-quoted holding of the concurring Circuit Judge in the Montana case; and while he does not refer to the majority holding, his conclusions are in our opinion not in accord with it. Specifically, we think, is this true as regards the holding (sustained by the highest authority) that "the law guarantees equal opportunities for competition, but does not and cannot guarantee economic results."

The right for which appellant con-

tends is the right to monopoly. If it were conceded that this right existed by virtue of the particular local conditions (insufficient patronage to support two plants), then it would seem much more reasonable to protect the right by inhibiting invasion of the territory by a rival. Somewhat sketchily drawn, the picture which the record portrays is substantially as follows: Appellant and its predecessors in title had held undisputed sway in the field from 1912 to 1925, at which latter time a great deal of dissatisfaction had arisen in the community (whether justly so is unimportant) over the service given by appellant; and responding to a popular demand the city granted a franchise to appellee. Appellant concedes that the ordinance rates are not unreasonably high—that is, not "greater than the traffic will bear." But it asserts that due to the stated local prejudice, it cannot compete with appellee under uniform rates, since thereunder appellee will get all or the bulk of the patronage, and thereby render appellant's investment worthless. Under this situation appellant claims the right of self-preservation by means of "cut-throat competition." Its survival, under such procedure, would manifestly depend upon its greater financial ability to "take punishment." But what if the tables were turned and it were a comparatively weak local concern, and its newly arrived competitor were a powerful intercity concern? Would the same right be accorded the latter to drive appellant from the field and thereby destroy its property, because there was not sufficient patronage to support both? We are dealing, of course, with public utilities, whose property is affected with a public interest, and not with a mere private business. But even as to private individuals the right to compete for the sole purpose of acquiring a monopoly through destruction of a rival is denounced both by statute and by oft-repeated judicial decision. The rule, as to public utilities, is that the governing body has the right to make uniform fixed rates applicable to all alike, not simply maximum rates. This necessarily denies the right of competition as regards rates; which is generally conceded to be advantageous to the public as a preventive of that destructive competition which produces monopoly, and confines competition to the realm of service. This principle is applied by the Interstate Commerce Commission, and railroad and public service commissions throughout the country. Its validity cannot now be brought in question.

But, contends appellant, this general right of the city to inhibit destructive competition must give way to the right of self-preservation where conditions are such that only one utility can survive. In other words, the situation presented is one of natural or essential monopoly with the consequently inherent right to protection therein. If it be conceded

that this right to monopoly exists, then it would seem to follow that the protection afforded should be just and adequate, through limiting the field to a single utility. Otherwise the weaker would in the smaller communities become the easy prey of the stronger. If monopoly is essential in such cases, then it should be one created and protected by constituted authority, and not by financial power through the process of ruthless, destructive competition.

As pointed out in the Montana case: "The remedy is in the state's hands, by restricting, as many states do, the number of utilities to the need of the field. The United States thus regulates interstate carriers."

Such power inheres in our Texas municipalities by virtue of the right to grant or refuse utility franchises. Whether this power is unlimited, or subject to review for unreasonable exercise, is not here involved. But it seems to us that it would be much more reasonable to hold that it is subject to limitation by the courts in those exceptional cases where necessary to protect property rights, than that the courts in such cases may nullify the power of the city to make reasonable fixed rates thereby to prevent the "cut-throat" competition for which appellant contends. Were the dilemma of striking down the one (rate making) or the other (franchise granting) power of the city presented, we would be constrained to adopt the latter as much more in consonance with reason, justice, and the general good than the former. We view the doctrine urged as dangerous, as well as novel, and are loath to give it our sanction.

Moreover, the problems incident to public utility regulation are legislative, not judicial, and expedients devised by the Legislature with the objective of correcting and preventing abuses, and at the same time dealing justly with the utilities, are not subject to judicial scrutiny, except where there is a clear invasion of some constitutional or inalienable right. Even did we entertain grave doubt as to the wisdom or ultimate effectiveness of the legislative policy, "we should be faithless to our supreme obligation if we interpreted the great generalities of the Constitution * * * as crystallizing our own notions of policy, our personal views of economics, and our theories of moral and social improvement." Mr. Chief Justice Hughes, in addressing the National Conference of Senior Circuit Justices at Asheville, N. C.

Appellee has cross-assigned error upon the action of the trial court in allowing appellant to supersede the judgment. This cross-assignment is overruled upon the authority of Houtchens v. Mercer, 119 Tex. 431, 29 S.W.(2d) 1031, 69 A. L. R. 1103.

The trial court's judgment is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

The motion asserts that we erred in upholding the constitutionality of that portion of chapter 226 (p. 380) 42d Leg. (Vernon's Ann. Civ. St. art. 1119), which prescribes that rates shall not be fixed so as to allow in excess of 10 per cent. per annum yield on "actual costs of physical properties, equipment and betterments"; and that such holding is in conflict with that in the Farmersville Case (Tex. Civ. App.) 55 S.W.(2d) 195. We did not so hold. That portion of the act was not involved in this case. The remaining portions of the act were held valid in the Farmersville Case, with which we are in full accord.

By several assignments it is urged that we erred in holding that appellant's remedy was by appeal to the Railroad Commission, because the commission's authority is only to review unjust, unreasonable, and discriminatory rates; and the relief here sought was against any rates whatsoever. It is not necessary to decide here whether (granted the right of a utility under any circumstances to engage in cut-throat competition) it would be necessary, before resorting to the court, to assert such right through the prescribed channels of appeal. Our holding, which we endeavored to make clear in the opinion, is that no such right exists, regardless of the proper forum in which to seek its enforcement.

The decision in the Great Northern Utilities Case on final hearing on the merits ([D. C.] 1 F. Supp. 328) throws no further light on the subject. As stated in our original opinion, we are in accord with the holding of the circuit judge, but cannot concur in the holding of the two District Judges in that case. The decision, whatever its real basis may be, is not binding upon this jurisdiction.

The motion is overruled.

Overruled.