## COLEMAN GAS & OIL CO. v. SANTA ANNA GAS CO.

### No. 1510—1722—6488.

Commission of Appeals of Texas, Sections A and B.

Dec. 30, 1933.

E. M. Critz and Critz & Woodward, all of Coleman, for plaintiff in error.

Woodruff & Holloway, of Brownwood, for defendant in error.

SHARP, Judge.

This suit was filed by the Santa Anna Gas Company, as plaintiff, against the Coleman Gas & Oil Company, as defendant, to restrain the defendant from violating a rate ordinance passed by the city commission of the city of Santa Anna on November 25, 1931, fixing specific rates to be charged for sale and distribution of natural gas to domestic and commercial consumers. The rate schedule set out in this ordinance was the same as prescribed by a previous ordinance of August 6, 1931. The defendant filed a plea in abatement for a defect of parties defendant on the ground that the city of Santa Anna was a necessary party to the suit. The defendant also answered to the merits of the case, and, among other things, contended that the ordinance in controversy was void because the city of Santa Anna had a population of less than 2,000 and the provisions of article 1119 did not apply, and, furthermore, that the amendment to article 1119 passed by the Forty-Second Legislature (see Session Acts 1931, c. 226, p. 380 [Vernon's Ann. Civ. St. art. 1119]) was unconstitutional. The trial court sustained exceptions to these defenses, and on final hearing entered judgment restraining the violation by defendant of the rate ordinance in question, which judgment was affirmed by the Court of Civil Appeals. 58 S.W.(2d) 540. A writ of error was granted.

It is contended that the amendment to article 1119, adopted by the Forty-Second Legislature 1931 (Session Acts pp. 380 and 381) is unconstitutional, and therefore the ordinance passed by virtue of that law cannot be upheld.

The controlling facts are undisputed. The city of Santa Anna is a municipal corporation organized under the general laws of Texas. The federal census of 1930 gave the city a population of 1,883. That since its incorporation in 1909 the population of the city has been more than 1,000 and less than 2,000. The city, on November 25, 1931, passed a rate ordinance fixing specific rates to be charged for sale and distribution of natural gas to domestic and commercial consumers. The schedule of rates fixed in this ordinance was the same as fixed by a previous ordinance of August 6, 1931.

█ It is contended that, by reason of article 6058, R. C. S. 1925, the city of Santa Anna had the right to regulate the rates to be charged by the public utilities within its limits and, if any party was dissatisfied with the rate fixed, that it may appeal to the Railroad Commission. The Court of Civil Appeals, basing its opinion upon the case of Community Natural Gas Company v. Natural Gas & Fuel Company, 34 S.W.(2d) 900, rendered by that court, affirmed the judgment of the trial court. The case just cited involved facts which

brought it under the provisions of original article 1119, and the court correctly upheld that article of the statute. It was held that articles 1119, 6058, and 6059, R. C. S. of 1925, furnished the method of procedure for adjustment of gas rates complained of before resorting to the courts. The court in that case did not hold that articles 6058 and 6059, when construed independently of article 1119, furnished sufficient authority for a city of the class involved here to regulate and fix rates as was done in this instance. It is undisputed that the city of Santa Anna does not fall within the class described in the original article 1119, and therefore the provisions of that article cannot be invoked.

With respect to the power to regulate rates of public utilities, certain fundamental rules are well established: (1) That the inherent power to regulate rates rests with the state; (2) that, if the Legislature delegates power to cities and towns to regulate rates, it must be plainly granted; and (3) all doubts concerning the grant of such power will be resolved against the municipality. If cities and towns of this state possess the power to fix rates, that power must be clearly expressed in the statutes. By referring to them, we find that in 1907 the Legislature enacted original article 1119 authorizing cities and towns having over 2,000 population to regulate rates upon a certain basis expressed in the law. When article 6058 was enacted, original article 1119 was in force. It will be noted that the power granted in article 6058 is expressed in general terms. By virtue of article 1119, the language used in article 6058 is sufficient, when the two articles are construed together, to authorize cities and towns with a population of over 2,000 to regulate rates upon certain conditions. The city of Santa Anna, having a population of less than 2,000, does not come within the provisions of article 1119, and the power to regulate rates must be found elsewhere. Amended article 1119 enacted in 1931 is the only article where that power may be found. Articles 1119, 6058 et seq., were in existence when amended article 1119 was enacted. The Legislature construed those laws as not granting to cities and towns of a population of less than 2,000 the power to regulate rates and supplied the authority by enacting amended article 1119. While not controlling, this construction of the law by the Legislature should certainly be given substantial weight in construing the foregoing articles.

This case was argued in connection with the case of the Texas-Louisiana Power Co. et al. v. City of Farmersville, Texas (Tex. Com. App.) 67 S.W.(2d) 235. That case involved the power of the city of Farmersville to regulate rates to be charged by electric light plants to consumers. This case involves the power of a city to regulate the sale of natural gas, and involves the construction of articles 6058 and 6059, not involved in the City of Farmersville Case. That case also involved the validity of amended article 1119, and it was held that the amended article was unconstitutional, and the ordinances enacted thereunder which authorized the city to regulate public utilities within its limits and to fix rates to be charged consumers were void. We refer to that opinion for a full discussion of the authorities touching this subject.

It therefore logically follows that the ordinance in controversy, finding no support in the statutes, must fall.

We therefore recommend that both the judgments of the Court of Civil Appeals and of the trial court be reversed, and that judgment be here rendered for the Coleman Gas & Oil Company.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.