THE PEOPLE *ex rel.* City of Kewanee *et al.* Appellants, *vs.*
THE KEWANEE LIGHT AND POWER COMPANY, Appellee.

*Opinion filed February 21, 1914—Rehearing denied April 9, 1914.*

1. CONSTITUTIONAL LAW—*laws regulating use of streets in cities throughout the State must be general.* Laws regulating the use of the streets of cities and villages throughout the State must be general in their operation, and every citizen must have the same right to the use of the streets as any other citizen, under the same circumstances.

2. SAME—*law permitting persons to lay service pipes in street must be general.* Not every person may be permitted to lay service pipes in the streets of a city, but the law which determines who may be permitted to do so must be a general law, which applies uniformly to all persons in substantially the same situation.

3. SAME—*to be general a law need not apply to every person in the State.* In order for a law to be general it is not necessary that it shall apply to every person in the State, and a law which is general in its nature and uniform in its operation upon all persons coming within its scope is a general law.

4. SAME—*power of legislature to impose limitations upon freedom of. actions. of individuals.* The legislature has power to impose limitations upon the freedom of action of individuals or particular classes of persons, but it must do so by a general law, and if it imposes restrictions on persons engaged in a particular business, such restrictions must be based upon some existing distinction or reason not applicable to others who are not engaged in such business.

5. SAME—*what necessary to render legislation as to particular class valid.* It is only when such distinctions exist as differentiate, in some important particulars, persons or classes from the body of the people that laws having operation only upon such particular persons or classes of persons have been held valid enactments.

6. SAME—*object of Gas Frontage act of 1897.* The object of the Gas Frontage act of 1897 (Laws of 1897, p. 100,) was to benefit abutting owners by giving them the right to prevent the obstruction and encumbering of the streets by the installation and maintenance of gas pipes and electric wires unless the ordinance granting such privileges was based upon the frontage petition required by the act, and such object is not a police regulation.

7. SAME—*effect of Gas Frontage act of 1897.* The result of the Gas Frontage act of 1897, requiring ordinances authorizing the

laying of gas pipes or stringing of electric wires in the streets to be based upon frontage petitions, is to confer upon persons or corporations using the streets for laying water pipes special privileges not enjoyed by persons or corporations using exactly the same kind of pipes for gas, and to confer upon abutting owners the special privilege of preventing the laying of pipes for gas which other owners, confronted with the same conditions, cannot exercise if the pipes are to be used for water.

8. SAME—*laying of service pipes in street is not a right but a privilege.* The laying of service pipes in a public street is not a right but a privilege, and a law conferring such privilege must be general in its operation and be based upon some differences which furnish a reasonable basis for the classification adopted by such law.

9. SAME—*Gas Frontage act of 1897 is invalid.* The Gas Frontage act of 1897, (Laws of 1897, p. 100,) which requires frontage petitions to authorize ordinances for the laying of pipes for gas but makes no such requirement if the pipes are to be used for water, even though the pipes are the same and laid and maintained in the same manner and with the same effect as respects the public use of the streets, is special in its operation and is void, as in violation of section 22 of article 4 of the constitution.

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

P. J. LUCEY, Attorney General, and NELS F. ANDERSON, State's Attorney, (THOMAS J. WELCH, City Attorney, and J. T. & S. R. KENWORTHY, of counsel,) for appellants.

PAM & HURD, and ROBERT C. MORSE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Henry county dismissing an information in chancery filed by the Attorney General and the State's attorney of Henry county, on the relation of the city of Kewanee and a number of its citizens and real estate owners, seeking to enjoin the maintenance in the streets of Kewanee, by the Kewanee Light and Power Company, of various gas mains and pipes now in the streets of that city. The appellee, the Kewanee

Light and Power Company, demurred to the information and the demurrer was sustained. The appellants elected to abide by the information, and a decree was entered dismissing it.

The information alleged that the city of Kewanee was a municipal corporation organized under the laws of this State in January, 1897; that on August 6, 1872, the village of Kewanee was incorporated and continued as a village until the city of Kewanee was organized; that the Kewanee Light and Power Company claims to be a corporation organized under the laws of the State, and claims that a license was issued to it by the Secretary of State on July 8, 1899; that said corporation, shortly after being chartered, began to lay, operate and maintain pipes for the distribution of inflammable gas for fuel and lighting purposes in the public streets and alleys of the city, and ever since that time has maintained, operated and laid pipes in said streets and alleys; that neither the board of trustees of the village of Kewanee nor the city council of the city of Kewanee ever passed an ordinance granting a franchise to said corporation for that purpose; that the only ordinance ever passed by the board of trustees of the village of Kewanee which pretended to grant any such right was ordinance No. 50, approved on April 15, 1880. That ordinance provided that George B. Dunn, his heirs, successors and assigns, should have the right to erect buildings and all works necessary to the manufacture of illuminating coal gas, and in consideration thereof should have the sole and exclusive right of selling and furnishing gas to said city and its inhabitants for twenty years. It granted the exclusive right for that term to lay such gas pipes in the streets, alleys and sidewalks of the village, and provided that Dunn might occupy certain premises, after having acquired title thereto, for the purpose of building a gasometer and all necessary buildings for the manufacture of gas. It was further alleged that the only ordinance ever passed by the city coun-

cil of the city of Kewanee pretending to grant any franchise to lay pipes for the distribution of gas for fuel and lighting purposes was ordinance No. 37, approved on April 24, 1899, granting to the Kewanee Gas Light and Coke Company a franchise for a period of twenty-five years from October 1, 1900, which ordinance is set out in the information. The information then alleged that appellee, the Kewanee Light and Power Company, claims to be the assignee of all the rights granted to Dunn under ordinance No. 50, but that whatever rights may have been granted by that ordinance expired on October 15, 1900; that at the time ordinance No. 37 was passed there was in force an act of the General Assembly approved April 5, 1897, entitled "An act to regulate and prescribe the conditions for the granting of rights and privileges for lighting and heating purposes by cities, villages and incorporated towns, and providing a remedy by the property owners where such conditions have not been complied with." The information then set out in full the provisions of this statute, and alleged that no petition of the property owners owning property on any of the streets of the city of Kewanee, representing more than one-half of the frontage thereof, was ever filed with or presented to the city council prior to the passage of ordinance No. 37 and that the ordinance was not based upon any such petition; that since January 1, 1900, the appellee has torn up the public streets of the city, made excavations therein, piled dirt and rubbish along said excavations, to a greater or less extent has blockaded the streets, has laid pipes in such excavations through which is conducted inflammable gas for fuel and lighting purposes, in connection with such gas mains has constructed risers of iron pipe which project several inches above the surface of the street, and unless restrained by an injunction will continue to maintain all of these things against the objection and without the consent of said city. The information further alleged that ever since the passage of ordinance No. 37

the city has insisted that said ordinance was void because
it was not based upon the petition of any property owners
and has protested against the tearing up of the streets and
the laying of gas mains therein; that there has been a con-
tinuous dispute between the city and the appellee as to the
right of the appellee to use the streets of the city; that
the appellee has claimed to be a public service corporation
using the streets for the purpose of furnishing gas for pub-
lic and private consumers; that during its occupancy of
said streets the appellee has furnished gas of an inferior
quality at an exorbitant price and in its dealings with the
public has been oppressive and high-handed; that because
of the attitude of appellee and its furnishing of inferior gas
at exorbitant prices the city and the inhabitants thereof are
desirous of ousting it from the public streets unless it will
obtain from the city a franchise upon fair and equitable
terms and upon petition of the owners of land, as provided
in the statute. The prayer was that the appellee disclose to
the court by what right or authority it claimed to be using
the public streets and alleys, and that it be restrained from
maintaining gas pipes and mains in any of the public streets
and from laying any gas pipes in said streets.

The act of June 5, 1897, (Laws of 1897, p. 100,) er-
roneously referred to both in the information and the de-
murrer as approved April 5, 1897, is as follows: "That
the city council in cities, or the president and board of trus-
tees in villages and incorporated towns, shall have no power
to pass an ordinance granting to any person or corporation
the right or privilege to lay any gas pipes for the distribu-
tion of inflammable gas for fuel or lighting purposes, or
to pass an ordinance granting to any person or corporation
the right or privilege to lay in or on the ground, or string
on poles any wires on, over or by which electricity for
lighting purposes is to be used, conveyed or distributed in
any street, alley or public grounds in any such city, village
or incorporated town, except upon the petition of the owner

of the land representing more than one-half of the frontage
on the street or alley, or so much thereof as is sought to
be used for the purposes above mentioned, or any or either
of them, and when the street or alley, or part thereof sought
to be used shall be more than one mile in length, no right
or privilege to lay pipes, or lay or string wires for lighting
purposes, shall be granted, unless a petition therefor shall
be presented to the city council of the city, or board of
trustees of the incorporated town or village, in which such
right or privilege is sought, signed by the owners of the
land representing more than one-half of the frontage of
each mile, and of the fraction of a mile, if any, in excess
of the whole mile, measuring from the initial point named
in such petition of such street or alley, or of the part there-
of sought to be used for the purposes above mentioned, or
either of them.   Any person being the owner of, or inter-
ested in, any lot fronting on any street or alley, or part
thereof, as is sought to be used for any or either of such
purposes, shall have the right by bill in chancery, in his or
their own name, to enjoin any person or corporation from
using such street or alley, or part of street or alley, for
either of such purposes, under any grant by the city coun-
cil or board of trustees which is not made in conformity
with the provisions hereof, and the sufficiency of the peti-
tion herein required shall be ascertained by the court in
which such bill in chancery may be filed."

One of the reasons set out as grounds of demurrer was,
that this act is special legislation and violates section 22 of
article 4 of the constitution.   That section prohibits the leg-
islature from passing any local or special law changing or
amending the charter of any town, city or village, or grant-
ing to any corporation, association or individual any spe-
cial or exclusive privilege, immunity or franchise whatever.
By section 10 of article 5 of the Cities and Villages act the
city council in cities is given authority to exercise the fol-
lowing powers:

"*Seventh*—To lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same.

"*Ninth*—To regulate the use of the same.

"*Thirteenth*—To regulate the openings therein for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights: *Provided, however,* that any company heretofore organized under the general laws of this State, or any association of persons organized or which may be hereafter organized for the purpose of manufacturing illuminating gas to supply cities or villages, or the inhabitants thereof, with the same, shall have the right by consent of the common council (subject to existing rights,) to erect gas factories, and lay down pipes in the streets or alleys of any city or village in this State, subject to such regulations as any such city or village may by ordinance impose."

The act in question amended the latter clause by limiting the power of the city council to permit the laying of gas mains and pipes in a street to cases in which the owners of more than half the frontage on the street should petition for such permission. The thirteenth clause refers to both gas and water mains and pipes while the act of 1897 refers to gas pipes only, thus imposing upon persons desiring to lay gas pipes in a street a disability not imposed upon those desiring to lay water pipes,—that is, the disability of not being able to do so without the consent of the owners of more than half the frontage on the streets,—and conferring upon abutting property owners the privilege of denying the use of the streets for the laying of gas pipes but not for the laying of water pipes.

Laws regulating the use of the streets of cities and villages throughout the State must be general in their operation. Every citizen must have the same right to the use of the street as any other citizen under the same circum-

stances. Not every person may be permitted to lay pipes in the street, but the law which determines who may be permitted to do so must be a general law which applies uniformly to all persons in substantially the same situation. It is not necessary that a law, to be general, should apply to every person in the State. Very few laws do so apply, but an act which is general in its nature and uniform in its operation upon all persons coming within its scope is a general law. (*People* v. *Hoffman,* 116 Ill. 587; *Cummings* v. *City of Chicago,* 144 id. 563; *Park* v. *Modern Woodmen of America,* 181 id. 214; *People* v. *People's Gas Light Co.* 205 id. 482.) A law is general, not because it embraces all of the governed, but because it embraces all who are similarly situated and who come within its provisions. *Hawthorn* v. *People,* 109 Ill. 302.

The legislature has the power to impose limitations upon the freedom of action of individuals or particular classes of persons, but it must do so by a general law, and if it imposes restrictions on persons engaged in a particular business, such restrictions must be based upon some existing distinction or reason not applicable to others not so engaged. It is only when such distinctions exist as differentiate, in important particulars, persons or classes of persons from the body of the people, that laws having operation only upon such particular persons or classes of persons have been held to be valid enactments. *Braceville Coal Co.* v. *People,* 147 Ill. 66; *Harding* v. *People,* 160 id. 459.

The subject of legislation involved in the act under consideration was the power of city councils over the streets. Prior to the passage of the act the legislature had given to city councils power to establish streets and regulate their use, and the openings therein, for the laying of gas or water mains and pipes. The city council might grant the use of the streets, alleys and public grounds of the city for the laying of gas or water mains, or the erection and maintenance of electric wires for lighting, or for telegraphs or tele-

phones, without regard to the consent or wishes of abutting property owners. (*City of Quincy* v. *Bull,* 106 Ill. 337; *McWethy* v. *Aurora Electric Light and Power Co.* 202 id. 218; *City of Springfield* v. *Postal Telegraph Cable Co.* 253 id. 346.) The city council had also the power to permit the laying of railroad tracks in the street, but by clause 90 of section 1 of article 5 of the Cities and Villages act it could only do so upon petition of the owners of more than half the frontage on the street. In *Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510, an abutting property owner had filed a bill to restrain the building of an elevated railroad in the street, on the ground that the ordinance authorizing it was illegal and void because not signed by the owners of more than one-half the frontage on the street, but it was held that the bill was without equity, and that only the city, the Attorney General or State's attorney on behalf of the people could intervene to restrain by injunction such unauthorized use of the street. At the session of the legislature following this decision the act in question was passed. The first part of the act limits the power of city councils to grant the right to lay gas pipes or to string electric light wires in substantially the language of clause 90 above referred to. Instead of stopping there, however, the act goes on to give to any abutting owner the right, by a bill in chancery in his own name, to enjoin the use of the street for the purposes mentioned in the act under any grant by the city council not made in conformity with the provisions of the act.

It seems manifest that the object of the act was the benefit of the abutting owners,—to give them the right to prevent the obstruction and encumbering of the street by the installation and maintenance of the things mentioned, to the inconvenience and damage of their use of the street and of their property. This object was not a police regulation, for the act does not refer to or affect any matter within the police power. So far as the making of necessary po-

lice regulations is concerned, the council already had ample power, and this limitation of its power cannot be attributed to an intention of the legislature, in this instance, to transfer the police power from the council to the owners of the greater part of the street frontage. The act was intended to confer private rights upon the owners of abutting property which they might protect by judicial proceedings. This being the purpose of the act, no reason is seen for the discrimination made against persons desiring to lay gas pipes in the street and in favor of those desiring to lay water pipes. The effect of the laying and use of the pipes is exactly the same in each case. The pipe is the same, the manner of laying the same, the same kind of excavation must be made, and after the work is completed the condition of the street will be the same whether gas pipes or water pipes have been laid. No reasonable basis exists for a difference in legislation in regard to pipes used in transporting gas from that in regard to pipes used in transporting water. The result of the act is to confer upon persons or corporations using water pipes in the street special rights and privileges not enjoyed by persons or corporations using exactly the same kind of pipes for gas. It confers upon abutting lot owners the special privilege of preventing the laying of the identical pipes in the same way if to be used for gas.

Counsel for the appellant argue that since the right to use a public street for any of the purposes mentioned in the act can only be acquired by a license, and no person or corporation has the inherent or common right to so occupy a street but such right can exist only by virtue of a grant from the State, therefore the legislature, representing the people, has the right to permit a public street to be used for one purpose and to prohibit its use for another. The right to practice law is not an inherent right but is a privilege, and it was so held in the case of *In re Day,* 181 Ill. 73. It was also held that the law conferring such privilege must be general in its operation. The court said (p. 80): "No

doubt the legislature, in framing an enactment for that purpose, may classify persons so long as the law establishing classes is general and has some reasonable relation to the end sought. There must be some difference which furnishes a reasonable basis for different legislation as to the different classes, and not a purely arbitrary one, having no just relation to the subject of the legislation. (*Braceville Coal Co.* v. *People,* 147 Ill. 66; *Ritchie* v. *People,* 155 id. 98; *Gulf, Colorado and Santa Fe Railroad Co.* v. *Ellis,* 165 U. S. 150.) The length of time a physician has practiced and the skill acquired by experience may furnish a basis for classification, (*Williams* v. *People,* 121 Ill. 84,) but the place where such physician has resided and practiced his profession cannot furnish such basis and is an arbitrary discrimination, making an enactment based upon it void. (*State* v. *Pennoyer,* 65 N. H. 113.) Here, the legislature undertakes to say what shall serve as a test of fitness for the profession of the law, and, plainly, any classification must have some reference to learning, character or ability to engage in such practice." The opinion then discusses the basis of the classification contained in the act, which applied a different rule to those who began the study of law on or after November 4, 1897, from that applied to those who began the study of law before that date, and proceeds: "Such classification cannot rest upon any natural reason or bear any just relation to the object sought, and none is suggested. The proviso is for the sole purpose of bestowing privileges upon certain defined persons."

In *People* v. *Blocki,* 203 Ill. 363, the city council, by a resolution, declared certain switch tracks which had been laid in the public street in accordance with an ordinance a nuisance and directed their removal. The order of the city council was held to be void as class legislation and obnoxious to the constitution. The court said (p. 373): "Admitting that the switch tracks might become nuisances, the common council, by virtue of the power delegated to it by

the legislature, would only have the right to abate or suppress the same by a general ordinance which applies alike to all switch tracks similarly situated, otherwise the owner of other tracks laid and maintained under the same authority as those in question would enjoy a right or privilege denied to the owner of the particular switch tracks singled out for removal. 'Each person subject to the laws has a right that he shall be governed by general, public rules. Laws and regulations entirely arbitrary in their character, singling out particular persons not distinguished from others in the community by any reason applicable to such persons, are not of that class. Distinctions in rights and privileges must be based upon some distinction or reason not applicable to others.'—*Harding* v. *People,* 160 Ill. 459, p. 465." It was city ordinances which were involved in that case, but the proposition that laws must operate generally and uniformly applies equally to acts of the legislature. The laying of the switch tracks was not a matter of common right but was a privilege, which could be regulated only by a general law.

In *L'Hote* v. *Village of Milford,* 212 Ill. 418, the court had under consideration certain amendments passed in 1903 to the Local Improvement act of 1897. One of them provided that in cities, villages and towns having a population of less than fifty thousand and more than twenty thousand no ordinance for making a local improvement to be paid for by special assessment or special taxation should be passed unless petitioned for by the owners of half the abutting property. The other amendment was similar, but the limits of population were twenty-eight thousand and twenty thousand, and there was a provision for an election in cities of between twenty-eight thousand and fifty thousand upon the petition of one hundred property owners. Each amendment was held unconstitutional. On page 428 it was said: "The conclusion is irresistible that in each of these enactments the classification of the municipalities by population

does not bear any true relation to the purposes and objects of the legislation. It is clear that the classification adopted in each of the acts is not based upon any distinction having a rational or reasonable relation to the special legislation affecting the classes. The classification is wholly arbitrary, and does not justify the legislation which would clothe some of the municipalities of the State with chartered powers not possessed by others, and which would also confer special privileges and immunities on property owners and electors in some of such municipalities which are denied to the owners of property and to electors in other of the cities and villages of the State." The special privileges were conferred in that case on property owners in certain cities, only. Here the privilege is defined, not by the locality but by the purpose for which the pipes are to be used, without any reasonable basis in the difference of use for the distinction.

In *People* v. *Rinaker,* 252 Ill. 266, an act conferring the privilege of organizing forest preserve districts was held unconstitutional because the benefits of the law were not equally available to all citizens similarly situated, upon complying with the requirements of the act.

Under the act now under consideration the owners of the larger part of the frontage on one street may prevent the laying of pipes in the street because they are to be used for conveying gas, while the owners of the larger part of the frontage on the next street cannot prevent the laying of exactly similar pipes on their street because they are to be used for carrying water. This difference in use affords no reasonable basis for legislative discrimination. The act of 1897 is special in its operation, and therefore violates section 22 of article 4 of the constitution, and is void. If the power of the city council to regulate the laying of pipes in the street is to be limited, it must be by a law applicable to all persons in substantially the same situation.

The discrimination in the act between electric wires to be used for lighting purposes and those for the transmission

of power has not been mentioned, because, so far as the record shows, the appellee is not interested in that phase of the matter and therefore cannot raise the question.

Other objections to the constitutionality of the act, as well as objections to the form of the proceedings, and the question of *laches,* have been argued but are not necessary to be determined.

*Decree affirmed.*