(No. 12502.—Decree affirmed.)

The Springfield Gas and Electric Company, Appellant, *vs.* The City of Springfield, Appellee.

*Opinion filed February 18, 1920—Rehearing denied April 13, 1920.*

1. Public utilities—*an injunction is proper remedy to prevent one public utility from unlawfully competing with another.* A private corporation lawfully operating a public utility may have an injunction against another private corporation operating without authority of law a similar utility which competes with and injures the former's business.

2. Same—*Municipal Ownership act and Public Utilities act are not conflicting.* The Municipal Ownership act is complete within itself and governs all public utilities owned by municipalities, while the Public Utilities act governs public utilities owned by private corporations and none of its provisions repeal by implication any provision of the Municipal Ownership act.

3. Same—*section 83 of the Public Utilities act does not nullify rules of statutory construction.* Section 83 of the Public Utilities act, providing that the invalidity of any of its provisions shall not affect the validity of the act, must be given a construction consistent with the rules of statutory construction and constitutional law, and does not justify holding that the exception of municipal public utilities in section 10 may be regarded as invalid without affecting the act as a whole.

4. Same—*exception of municipal public utilities in section 10 of Public Utilities act is not invalid.* The exception from the Public Utilities act of public utilities owned by municipalities, in secton 10 of the act, does not violate the provision of the constitution against local or special laws granting special privileges, as there is a valid reason for the classification of municipal public utilities, and it is for the legislature to determine whether such utilities shall be subject to the Public Utilities Commission or be governed by the municipalities through the Municipal Ownership act.

5. Same—*legislature may authorize municipalities to own and operate public utilities.* The legislature has the power to authorize municipalities to own and operate public utilities, to prescribe the rates for the service performed, and to delegate to the municipalities the right to regulate and control such municipally owned plants.

6. Same—*right to fix rates for public utilities is vested in the State.* The right to fix rates for all public utilities is vested, in the

first instance, in the State, whether such utilities are owned and operated by private individuals or by municipalities, and the legislature may assume that the rates will not be the same for both classes of utilities.

7. SAME—*Municipal Ownership act does not violate constitutional provision against special privileges.* The Municipal Ownership act, authorizing municipalities to own and operate public utilities, does not violate section 22 of article 4 of the constitution, prohibiting the enactment of local or special laws granting special privileges.

8. SAME—*municipality acts as a private corporation in supplying inhabitants with service of a public utility.* A municipal corporation which supplies its inhabitants with light, gas or water does so in the capacity of a private corporation and not in the exercise of its powers of local sovereignty.

9. SAME—*all public utilities owned by municipalities are excepted from Public Utilities act by section 10.* All public utilities owned by municipalities are excluded from the Public Utilities act and from the supervision of the commission by the exception in section 10 of the act, whether such utilities are operated by the cities solely for their own use or also to supply service to the inhabitants.

10. SAME—*term "public utility" precludes idea of private service.* The term "public utility" implies a public use, carrying with it the duty to serve the public and treat all persons alike, and precludes the idea of service which is private in its nature and is not to be obtained by the public.

11. STATUTES—*before holding a particular provision invalid the courts should consider effect upon the entire enactment.* In the determination of the validity or invalidity of particular provisions of a statute the courts should not be unmindful of the effect upon the entire enactment of the holding of any particular provision invalid.

12. SAME—*statute must be considered as a whole.* In construing a statute the act must be considered as a whole and the intention derived from a consideration of all its clauses and provisions.

13. SAME—*when invalidity of a particular provision renders the entire act invalid.* Where different sections of a statute are independent of each other, that which is unconstitutional may be disregarded and valid sections allowed to stand; but where the court cannot say that the legislature would have passed the act with the void portion eliminated the entire act must be held invalid, as the court has no power to make that a law which the legislature did not intend.

14. CONSTITUTIONAL LAW—*municipal corporations may be classified as distinct from private corporations.* While the word "cor-

poration," as used in section 22 of article 4 of the constitution, prohibiting the passing of local or special laws granting special privileges, includes municipal corporations, such corporations may be classified in a statute as a class distinct from private corporations.

15. SAME—*constitution does not prohibit a reasonable classification for purposes of legislation.* Section 22 of article 4 of the constitution, prohibiting special laws, does not mean that the same rule shall apply to every individual in the State under all circumstances but only under substantially the same circumstances; and laws may be valid though operating only upon particular persons or classes, if the classification is not arbitrary and there is a valid reason for the particular operation.

16. SAME—*when classification is valid.* The only reason which is recognized as supporting a classification in a statute is a substantial distinction which differentiates in important particulars the particular persons to whom the law applies from all other persons and having some reasonable relation to the purpose of the law.

DUNN, C. J., and CARTWRIGHT and FARMER, JJ., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WILLIAM L. PATTON, and P. B. WARREN, for appellant.

B. L. CATRON, and STEVENS & HERNDON, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellee, the city of Springfield, owns and operates an electric light plant, produces electricity for its own use and sells electricity not required for its purposes to private consumers at about one-half the cost for which it can be procured from other sources. Appellant is a private corporation engaged in the production and sale of electricity in the city of Springfield and has complied with the provisions of the Public Utilities act. It filed its bill for an injunction against appellee in the circuit court of Sangamon county, alleging, in substance, that appellee in its production and sale of electricity to private consumers is violating section 35 of the Public Utilities act, providing that no public utility shall undertake to perform any service or to furnish any

product or commodity unless and until the rates and other charges and classifications, rules and regulations relating thereto, applicable to such service, product or commodity, have been filed and published in accordance with the provisions of that act; also that appellee is violating sections 33 and 34 of said act, which require the filing with the Public Utilities Commission and the printing, posting and keeping open to public inspection of schedules showing all rates, charges and classifications in force for any product furnished or service rendered by it as such public utility. The city filed an answer, to which appellant filed exceptions. There was a hearing on the bill, answer and exceptions, and the court entered a decree dismissing the bill for want of equity.

The theory of the bill is that appellant and appellee are competitors in business, are operating public utilities and are both subject to the Public Utilities act; that appellee not having complied with the requirements of the act is prohibited by its terms from engaging in the business, and that appellant is entitled to an injunction to prevent the illegal competition.

The parties have treated the issues in the case as questions of law, precisely as if they had arisen on a demurrer to the bill. In disposing of this appeal the court will also indulge in that same assumption.

The question for decision in the case is whether or not a municipality in this State owning and operating an electric light plant for the production of electricity for its own use and also for the sale thereof to private consumers is subject to the provisions of the act and to the supervision of the Public Utilities Commission.

We are disposed to agree with the proposition of appellant that a private corporation lawfully operating a public utility may have an injunction against another private corporation operating without authority of law a similar utility which competes with and injures the former's business.

Municipal corporations, however, are expressly excepted from the terms and provisions of the Public Utilities act by section 10 thereof and in a very emphatic manner,—so much so that there can be no question that the act was not intended to apply to any public utility owned by a city. The following definitions are found in said section 10:

"The term 'public utility,' when used in this act, means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever, (except, however, such public utilities as are or may hereafter be owned or operated by any municipality) that now or hereafter: (*a*) May own, control, operate or manage, within the State, directly or indirectly for public use, any plant, equipment or property used or to be used for or in connection with the transportation of persons or property or the transmission of telegraph or telephone messages between points within this State; or for the production, storage, transmission, sale, delivery or furnishing of heat, cold, light, power, electricity or water.

"The term 'company,' when used in this act in connection with a public utility, includes any corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever, owning, holding, operating, controlling or managing such a public utility, but not municipal corporations.

"The term 'corporation,' when used in this act, includes any corporation, company, association, joint stock company or association, but not municipal corporations."

The Public Utilities act was passed June 20, 1913, as House Bill No. 907, and was approved June 30, 1913. It did not take effect until January 1, 1914, by special provision, because of the fact that that time was considered necessary for the appointment of the Public Utilities Commission created thereby and for the Railroad and Warehouse

Commission to prepare its books and records to be taken over by the Public Utilities Commission. The Municipal Ownership act was passed June 20, 1913, as Senate Bill No. 538, was approved June 26, 1913, and became effective July 1, 1913. By section 1 of the latter act any city of this State is given the power to acquire, construct, own and operate any public utility the product or service of which, or a major portion thereof, is or is to be supplied to the city or its inhabitants, and to contract for, purchase and sell to private persons or corporations the products or service of such utility, to fix rates and charges for the service rendered by such public utilities and to make all needful rules and regulations in relation thereto. The term "utility," when used in the act, is defined thereby to mean and include any plant, equipment or property and any franchise, license or permit used or to be used for the production, storage, transmission, sale, delivery or furnishing of cold, heat, light, power, or for the conveyance of oil or gas by pipe line, etc. Section 12 of the act provides that the charges for the service rendered by means of any public utility of any city shall be high enough to produce a revenue sufficient to bear all costs of maintenance and operation, to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund that shall be sufficient to meet all outstanding bonds or certificates at maturity. Section 13 thereof provides that the accounts for the public utility shall be kept distinct from other city accounts and in such manner as to show the true and complete financial results of such city ownership and operation, and so as to show the actual cost to such city of the public utility owned, all cost of maintenance, extension and improvement, all operating expenses of every description and the amounts set aside for sinking fund purposes, and also reasonable allowances for interest, depreciation and insurance, and estimates of the amount of taxes that would be chargeable against

292 — 16

such property if owned by a private corporation. It further provides that the city council shall cause to be printed annually for public distribution a report showing the financial results of such city ownership and operation, in form as aforesaid, and that the accounts of such utility, so kept, shall be examined once each year by an expert accountant, who shall report to the city council the result of his examination.

As will be seen from the foregoing, the Municipal Ownership act is a complete act within itself, authorizing cities to acquire, own and operate public utilities within their borders and to regulate the same and fix rates and charges as aforesaid, and the act furnishes the reason for excepting such public utilities from the jurisdiction of the Public Utilities Commission by the provisions of section 10 of the Public Utilities act.

Appellant insists that if such public utilities owned and operated by cities should be held to be excepted from the jurisdiction of the Public Utilities Commission, as provided in said section 10, such a construction would render that exception void because in violation of section 22 of article 4 of the State constitution, prohibiting the legislature from passing any local or special law granting to any corporation, association or individual any special privileges, and also in violation of the fourteenth amendment to the Federal constitution, which prohibits the States from denying to any person the equal protection of the laws. In the determination of the validity or invalidity of particular provisions of public laws, courts should not be unmindful of the effect upon the entire enactment of the holding of any particular provision invalid. If the exception in section 10 is of such import that the other sections of the Public Utilities act without such exception would cause results not contemplated or desired by the legislature, then the entire statute must be held invalid if we hold the exception invalid. (*Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540.)

On the other hand, if section 10 is held to be invalid and the balance of the act valid, then a large portion of the Municipal Ownership act must likewise be held to be invalid, as a bare inspection of the act will show.

The purpose of the Public Utilities act expressed in its title is to provide for the regulation of public utilities. If municipal corporations are made subject to the act, will a result be produced contrary to the intention of the legislature? The legislature by the exception in section 10 has answered this question and has left nothing to inference, unless, as contended by appellant, section 83 of said act has expressed a different and controlling intention by this language: "If any section, subdivision, sentence or clause of this act is for any reason held invalid or to be unconstitutional, such decision shall not affect the validity of the remaining portion of this act." The statute must be considered as a whole and the intention derived from a consideration of all of its clauses and provisions. The statute, we must infer, was adopted in accordance with a plan. (*State* v. *Gantz,* 124 La. 535.) That plan was, that all private corporations owning and operating public utilities should be bound by all the provisions of the act and that all municipal corporations should be excluded from the provisions of the act. Public utilities owned and operated by municipalities were to be governed and controlled by the provisions of the Municipal Ownership act and regulated only by such municipalities. It is not possible to get away from these conclusions. To strike out the provisions of section 10 exempting municipalities from the terms and provisions of the Public Utilities act and to then hold that the remainder of the act is valid would be the making of a law by this court that the legislature never intended to make and at the same time would be nullifying a large portion of the Municipal Ownership act which the legislature clearly intended should be and remain effective. While it is well settled by adjudications of this and other courts that

if different sections of a statute are independent of each other, that which is unconstitutional may be disregarded and valid sections allowed to stand and be in force, yet it is also the inflexible rule that where a portion of an act is valid and a portion invalid, and the court cannot say that the legislature would have passed the act with the void portion eliminated, then the entire act must be held invalid. *People* v. *McBride,* 234 Ill. 146; *Cornell* v. *People,* 107 id. 372; *Hinze* v. *People,* 92 id. 406; *People* v. *Cooper,* 83 id. 585; *Mathews* v. *People,* 202 id. 389; *Kellyville Coal Co.* v. *Harrier,* 207 id. 624.

We cannot agree with appellant's contention that the saving clause in section 83 of the Public Utilities act will justify this court in holding invalid the exception in section 10 without affecting the act as a whole. Section 83 was not intended to nullify any rule of statutory construction and must receive a construction consistent with the rules of constitutional law. While this section may be some indication of legislative intention, yet in construing it we must give due consideration to the rules heretofore laid down by this court in the interpretation of statutes. (*State* v. *Bancroft,* 148 Wis. 124.) We cannot, under such rules, ignore the fact that the enforcement of this section to the letter would not only nullify the exceptions in section 10 aforesaid, but would practically nullify the whole Municipal Ownership act.

The history of the legislation under consideration furnishes the court material aid in determining whether or not the legislature would have passed the act with the exception in section 10 eliminated. It appears from the senate and house journals as quoted by appellant that the two acts were introduced and passed as twin measures. They were passed after a legislative inquiry made by a committee appointed under a joint resolution passed in 1911, authorizing an inquiry into public utilities and also municipally owned public utilities. A spirited contest appears to have been

waged concerning the Public Utilities act in reference to the senate's "home rule" amendments, giving to cities the right to regulate public utilities. The house refused to concur in those amendments, and later the senate receded from its amendments and permitted the house bill to become a law and the house permitted the senate bill to become a law. The Governor submitted the house bill to the Attorney General for his opinion as to its form and constitutionality. In that opinion the Attorney General said: "The bill as originally framed provides for the exercise by each city of power and authority to regulate its own public utilities, but the provisions on that subject were stricken out before the bill was finally adopted. However, the General Assembly has passed Senate Bill No. 538, which, as I have already informed you, is constitutional and valid and which by its terms authorizes cities to own and operate public utilities within their limits, and section 10 of House Bill No. 907 especially exempts municipally owned or operated public utilities from the operation of the act." (Reports and Opinions of Attorney General, 1913, p. 46.) The efforts of the Governor, who signed these measures, to get the home rule feature incorporated in the house bill are well known by everybody who is familiar with the contest over these measures during the time they were pending in the legislature. It seems to us that the conclusion must follow that if the exception contained in section 10 had been stricken by amendment the Public Utilities act would never have been passed by that legislature, as the act would then have authorized the Public Utilities Commission to regulate and fix rates for public utilities owned and operated by municipalities, contrary to the provisions of the Municipal Ownership act. This court would, in our judgment, be virtually making a law by so amending the act and holding the Public Utilities act valid as amended. Courts have no power to make laws.

If appellant's contention is correct that the exception in section 10 creates a special or local law and grants special privileges in violation of our constitution, this court would have no alternative but to hold it invalid, even though in doing so we would be compelled to declare the entire Public Utilities act unconstitutional. But we do not agree with appellant's contention that exempting municipalities and public utilities owned and operated by municipalities from the provisions of the statute violates the constitution. The word "corporation," as used in section 22 of article 4 of our constitution, does include municipal corporations. (*People* v. *Fox*, 247 Ill. 402.) But municipal corporations may form a separate and distinct class from private corporations. The constitutional provision does not mean that the same rule shall apply to every individual in the State under all circumstances but only under substantially the same circumstances, and laws may be valid though operating only upon particular persons or classes if there is a valid reason for such particular operation. (*Condon* v. *City of Chicago,* 249 Ill. 596; *Tarantina* v. *Louisville and Nashville Railroad Co.* 254 id. 624; *Dawson Soap Co.* v. *City of Chicago,* 234 id. 314; *Douglas* v. *People,* 225 id. 536; *Casparis Stone Co.* v. *Industrial Board,* 278 id. 77.) Of course, an arbitrary designation of persons is not permissible. The only reason which is recognized as valid is a substantial distinction, which differentiates in important particulars the particular persons to whom it applies from all other persons, having some reasonable and just relation to the purpose of the law. (*People* v. *Kewanee Light Co.* 262 Ill. 255.) The basis of the two statutes in question for making two distinct classes of public utilities,—those owned and operated by private corporations and those owned and operated by municipalities,— is the supposition that there exists some valid reason why both of them cannot or should not be subject to all the provisions of the Public Utilities act and be regulated and rates fixed for them in accordance with the provisions of that

act. If such a valid reason does exist, the legislature did not violate any constitutional provision in enacting the two separate acts for the regulation and control of the two classes of public utilities. The legislature may classify persons or occupations for the purpose of legislative regulation and control, provided such classification is not an arbitrary one and is based upon some substantial difference which bears a proper relation to the classification. *People* v. *Schenck,* 257 Ill. 384.

The purposes of the Public Utilities act were to prevent exorbitant rates, unjust discrimination and undue preferences in rates between different consumers and at the same time to protect public utilities from local influences which would compel them to render services at such low rates that efficient services to the public would be thereby impaired. To enable consumers to protect themselves against exorbitant rates and unjust discrimination without compelling them, in the first instance, to resort to their right to a hearing under the act on the question of rates, sections 33, 34 and 35 were incorporated in the Public Utilities act, requiring the filing of schedules of rates and the posting and publishing of the same. No such requirement is necessary for the protection of the consumer when the utility is owned and operated by the municipality. Before the enactment of the Public Utilities act the records of public utilities owned by private corporations or private persons were free from public inspection. Municipalities speak only by their records, which are always open to inspection. Under section 1 of the Municipal Ownership act, granting municipalities the power to own and operate public utilities and fix the rates and charges for the services rendered by them and to make all needful rules and regulations in relation thereto, municipalities can only act by ordinances and resolutions passed in the manner required by statute. Municipalities under the Municipal Ownership act are limited in rates and charges for the product furnished by their public

utilities, and cannot operate them at a profit to the same extent as can private corporations, associations or persons owning like utilities. They are required, under the act governing them, to keep separate accounts of the moneys received from the operation of their utilities, and such funds cannot be used as revenues except to discharge their obligations and expenses in the operation of the utilities. Their charges for such services are simply to be high enough to produce revenue sufficient to bear all costs of maintenance and operation, to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund sufficient to meet all outstanding bonds or certificates at maturity, issued on account of such utilities. The statute does not contemplate that the rates shall be higher or lower than for the purposes aforesaid, no matter what effect such rates and charges may have upon other corporations or persons owning or operating public utilities.

The legislature had the right and power to authorize and empower municipalities to own and operate public utilities. That is not questioned in this case. It is not questioned that the legislature had the power to prescribe the rates and charges or the limits of the same to municipalities, as it has done in the Municipal Ownership act. The right to fix rates for all public utilities is vested, in the first instance, in the State. The State has the right to prescribe rates and charges by private corporations and persons for the operation of public utilities that shall produce a reasonable profit or return over and above and on their entire investment and outlay, and, on the other hand, to limit the rates and charges of utilities owned by municipalities so that they will only be sufficient to meet outlays and expenses of every kind by reason of their ownership and operation, as provided by the Municipal Ownership act. It is contemplated that private corporations and persons shall realize profits. The legislature had the right to assume that the

rates and charges of each of these two classes of public utilities would not and could not be the same to consumers. It is clear, therefore, that the legislature acted within its constitutional rights and powers in enacting the two statutes and making different provisions in so far as the same were necessary to accomplish the purposes for which the two acts were enacted. It is equally clear that the legislature had the right and power to delegate to the municipalities the right of regulation and control of such municipally owned plants. Such right is clearly recognized not only in this State, but in other States. It might have given the Public Utilities Commission the right to fix the rates and charges of plants owned by municipalities in accordance with the provisions of the Municipal Ownership act, as well as the right to regulate and fix charges for privately owned public utilities under the Public Utilities act, had it seen fit to do so. The fact that it has designated municipalities as the proper bodies that shall regulate and fix the rates to be charged by utilities owned by them can furnish no cause for complaint to appellant, as the rates that appellant may charge under the Public Utilities act are necessarily fixed upon a different basis, and may or may not be the same as the rates and charges that may be fixed under the Municipal Ownership act, even in the same city.

There is another reason for holding that neither of the two acts aforesaid violates section 22 of article 4 of our constitution or the fourteenth amendment to the Federal constitution. A law is not local or special, in a constitutional sense, if it operates in the same manner upon all persons in like circumstances. "A law general in its character may extend only to particular classes and not be obnoxious to the provisions of the constitution if all persons of the same class are treated alike under similar circumstances and conditions. A law is general, not because it embraces all the governed, but that it may from its terms, when many are embraced in its provisions, embrace all

others when they occupy like positions to those who are embraced. Such a law must be based upon some substantial difference between the situation of a class or classes and another class or classes to which it does not apply." (*Chicago, Burlington and Quincy Railroad Co.* v. *Doyle,* 258 Ill. 624.) When tested by the foregoing rules it will readily appear that the Public Utilities act does not violate the constitutional provision aforesaid by reason of the exception in section 10. The Municipal Ownership act for the same reason is equally unobjectionable, so far as it is material to the issues in this case.

There is no reason for appellant's contention that any part of the Municipal Ownership act is repealed by implication by the provisions of the Public Utilities act, because the latter act was passed after the enactment of the former. Whether or not public utilities owned by municipalities shall be placed upon a different basis from public utilities owned by private corporations, associations or persons for regulation and for fixing their rates and charges is a question solely for the legislature to determine, as is also the question whether or not they shall be regulated and rates fixed for them by different tribunals or by the same tribunal. There was a good and substantial reason for the legislature dividing public utilities into the two classes aforesaid and making laws specially applicable to each of them, as aforesaid. When we consider the acts in this light their several provisions are in complete harmony, and are not so antagonistic to each other in the matters complained of by appellant as to leave any reasonable ground for the contention that any provision of the Municipal Ownership act is repealed by implication by any provision of the other act.

We have no disagreement with the general proposition argued by appellant that a municipal corporation which supplies its inhabitants with light, gas or water does so in its capacity of a private corporation and not in the exercise of its powers of local sovereignty. This general principle has

been announced in a number of cases in this and other juris-
dictions, mostly in cases for personal injuries arising on
the question of the liability of cities operating municipally
owned public utilities. We may concede that the operation
by a municipality of an electric light plant for the furnish-
ing of light or power to private consumers for gain cannot
in any sense be the performance of a governmental function.
Such established principle can furnish no reasonable basis
for appellant's argument in this case that such municipalities
must be put in the same class with private corporations or
persons operating public utilities, for the purpose of regu-
lation and of fixing their rates and charges in operating
such public utilities. It might just as well be argued that
corporations operating steam railroads should be put in the
same class, for all purposes of legislation, with corporations
operating street railroads, because they both carry for hire
passengers and freights of all kinds. *Chicago, Indianapolis
and Louisville Railway Co.* v. *Railroad Com.* 173 Ind. 469.

Appellant suggests that if we construe the exception in
section 10 of the Public Utilities act as simply excepting
municipal plants that only produce electricity for the use
and requirements of the municipalities when acting in their
governmental capacity, such a construction would render
the whole act valid. It is argued that such a construction
is permissible under the well known rule that words in a
statute may be modified, altered or supplied so as to obvi-
ate any repugnance or inconsistency with legislative inten-
tion, although in so doing particular provisions of an act
may not be read or construed according to their literal read-
ing. (*Public Utilities Com.* v. *Monarch Refrigerating Co.*
267 Ill. 528.) It is therefore urged that the exception
should be read as if it were written, "except, however, such
public utilities as are or may hereafter be owned or oper-
ated by any municipality *for its own use.*" This conten-
tion is fully answered already, we think, by our showing
that there is no such repugnance or inconsistency in these

statutes to be obviated, and there is therefore no necessity for invoking the rule suggested. Besides, it is clear that no such rule could be applied, in any event, without doing violence to the legislative intent. There can be no doubt whatever that the legislature intended that public utilities owned and operated by municipalities should not be under the supervision and regulation of the Public Utilities Commission in any way. There is also no reason for supposing that such municipally owned and operated plants as only produced electricity or other product for the use of the municipalities were intended to be excepted by section 10. Such a utility would not be a public utility any more than would a utility owned and operated by a private individual for his own use exclusively. The term "public utility" implies a public use carrying with it the duty to serve the public and treat all persons alike, and it precludes the idea of service which is private in its nature and is not to be obtained by the public. (*Public Utilities Com.* v. *Bethany Telephone Ass'n,* 270 Ill. 183.) No such private utility could be considered as being subject to the provision of said act in the absence of any exception, and the legislature cannot be reasonably held to have made such a meaningless exception in this statute.

One of the statements made by appellant, and upon which it bases an argument that section 10 aforesaid, with its exceptions aforesaid, is unconstitutional, is, that "any legislation which pretends to relieve the city of the same burdens of regulation imposed upon private corporations or individuals engaged in like enterprise is invalid." As we have already shown, municipally owned public utilities are not exempt from regulation by the Municipal Ownership act as to rates and charges, and they are not exempt from the making of rates and charges that are reasonable and just and uniform for the same amount and character of service. Under the Municipal Ownership act the consumers are just as completely protected from exorbitant rates and

unjust discrimination as the consumers are under the Public Utilities act. If the consumers had to depend entirely upon the municipalities to be kept free from the effects of unjust and exorbitant rates and unjust discrimination then there might be some reason for appellant's contention. The consumers of the product of utilities of private corporations and private persons operating under the Public Utilities act may be just as much subject to be burdened with exorbitant and unjust rates and unjust discrimination under the action of the Public Utilities Commission, if we are to assume that all public officials would be corrupt and unfair or inefficient when acting in such capacity. The Public Utilities Commission may make serious mistakes in rating and in regulating public utilities, and so may officers of municipalities acting in a similar capacity. We have no reason to assume that either one will intentionally be corrupt or unfair. There is little or no reason why either body might be more unfair or corrupt than the other. But the consumers in either case have the right to appeal to the courts to correct such abuses as may occur. Municipal officers under the Municipal Ownership act cannot discriminate in rates or make exorbitant and unjust rates to consumers if they discharge their duties faithfully, honestly and efficiently under that act. All their rates and charges fixed by ordinances or resolutions are subject to review by the courts to a like extent as the rates fixed by the Public Utilities Commission for public utilities privately owned, although the matter of review may be had under a different law and by a different remedy. *Butler* v. *Karb,* 96 Ohio St. 472; *City of Cincinnati* v. *Public Utilities Com.* 98 id. 320; 2 Abbott on Mun. Corp. 1196.

The question whether or not the appellant or any other public utility or person may be injured or the Public Utilities act violated by a lessee of appellee is not in this case, as appellee has not leased and is not intending to lease its plant to any private corporation or person whatever, and

appellant does not claim that there is to be such a leasing. Upon the same footing is the question whether or not appellee may sell its product to persons residing outside its corporate limits. We must therefore regard all such discussions by appellant as serving no useful purpose in this case and as not proper to be further considered by us in this opinion.

Municipal ownership of public utilities may or may not be a wise policy for the State. It was a matter for the legislature and not for this court to determine. The act has been adopted, as aforesaid, and we find no legal reason why it should not be held valid as written, in so far as it is questioned in this case. Appellant's contention, therefore, that public utilities owned and operated by municipalities are subject to the same regulation and rates under the Public Utilities act as those owned and operated by private corporations, and that it should be granted an injunction on the grounds contended for by it, cannot be sustained.

The decree of the circuit court is affirmed.

*Decree affirmed.*

DUNN, C. J., CARTWRIGHT and FARMER, JJ., dissenting:

In operating an electric light plant and selling electricity to individuals the city is not exercising its governmental powers but its private or proprietary rights, and its duties and liabilities are the same as those imposed by law upon individuals engaged in the same business. It was so held in regard to the furnishing of water and gas in *Wagner* v. *City of Rock Island,* 146 Ill. 139, where we said (p. 154): "A municipal corporation which supplies its inhabitants with gas or water does so in its capacity of a private corporation and not in the exercise of its powers of local sovereignty. If this power is granted to a borough or city it is a special private franchise, made as well for the private emolument and advantage of the city as for the pub-

lic good. In separating the two powers, public and private, regard must be had to the object of the legislature in conferring them. If granted for public purposes exclusively they belong to the corporate body in its public, political or municipal character; but if the grant was for purposes of private advantages and emolument, though the public may derive a common benefit therefrom, the corporation *quo ad hoc* is to be regarded as a private company. It stands upon the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." (*City of Chicago* v. *Selz, Schwab & Co.* 202 Ill. 545; *Village of Palestine* v. *Siler,* 225 id. 630.) In *Butler* v. *Karb,* 96 Ohio St. 472, it is said: "That neither public nor private corporations may discriminate between members of the public with reference to rates and terms of service does not longer admit of controversy. This wholesome rule, long in force, has had frequent application, particularly to common carriers and utilities companies. A municipality operating a utility is not exempt therefrom. Acting in a proprietary capacity, we have seen, it should have the freedom of action of a private utility corporation, but it is also subject to the same restrictions as to practices of discrimination in rates and service." So far as a municipality is engaged in the commercial distribution of electricity, its rights and liabilities, powers and duties are measured by the same standard and governed by the same rules as apply to private corporations similarly engaged.

There is no doubt that the exception of municipalities owning or operating public utilities from the operation of the Public Utilities act, which applies to every other corporation, company, association or individual, grants to such corporations a special privilege which such other corporations do not enjoy, and is therefore obnoxious to the provision of the State constitution against special laws unless there exists some reasonable basis, having reference to the object of the legislation, for placing such municipalities in

a class by themselves. The constitutional provision does not mean that the same rule shall apply to every individual in the State under all circumstances but only under substantially the same circumstances, and laws may be valid though operating only upon particular persons or classes of persons if there is a valid reason for such particular operation. An arbitrary designation of persons is not permissible. The only reason which is recognized as valid is a substantial distinction which differentiates in important particulars, having some reasonable and just relation to the purpose of the law, the particular persons to whom it applies from all other persons. *People* v. *Kewanee Light Co.* 262 Ill. 255.

A municipal corporation has no authority either to sell electricity to private consumers or to fix the rate at which it shall be sold within the municipality in the absence of a statute enabling it to do so. In June, 1913, the General Assembly passed and the Governor approved a law which went into effect on July 1 and gave to any city in the State the power to acquire, construct, own and operate any public utility the product or service of which, or a major portion thereof, is or is to be supplied to the city or its inhabitants, and to contract for, purchase and sell to private persons or corporations the products or service of such utilities and to fix the rates and charges for the services rendered by such public utilities. (Laws of 1913, p. 455.) This statute does not confer authority for the regulation of public utilities upon municipalities. At the same session of the legislature another law was enacted which became effective on January 1, 1914, and is known as the Public Utilities act. (Laws of 1913, p. 459.) This act created a Public Utilities Commission, to which it gave the general supervision of all public utilities and upon which extensive powers of regulation were conferred. Among many other things every public utility was prohibited from undertaking to perform any service or furnish any product or commod-

ity unless or until the rates and other charges and classifications, rules and regulations relating thereto, applicable to such service, product or commodity, have been filed and published in accordance with the provisions of the act. Such rates, charges or classifications, or any rule, regulation, practice or contract relating to or affecting any rate or other charge, classification or service, cannot be changed, unless the commission otherwise orders, except after thirty days' notice to the commission and to the public; no increase in any rate or charge can be made except upon a showing before the commission and a finding by it that such increase is justified, and no greater or less rate can be charged for any product or service than that specified in the schedule at the time filed and in effect. Section 10 contained the clause which has been referred to, defining the term "public utility" and excepting utilities owned by municipalities from the definition. There is no doubt that the legislature intended that public utilities owned or operated by municipalities should not be under the supervision of the Public Utilities Commission or subject to its authority. There is no reason to suppose that this exemption was limited only to the operation of the utility in furnishing its product and service for the use of the municipality and did not extend to the entire operation. On the contrary, there was no occasion to except an electric light plant, for instance, which a city operated only for lighting the streets and public places and property and which had no private consumers. There was no need of all the detailed requirements of the Public Utilities act in the case of a municipality which is the only consumer of the product of its plant. The exception applies to utilities owned by municipalities and operated commercially.

The purpose of the Public Utilities act was the prevention of extortionate charges and unjust discriminations by public utilities. The authority to regulate public utilities is vested in the legislature, which may exercise it directly or

292 — 17

through such governmental agencies as it may deem best. It might have given to each city in the State the power to regulate the rates to be charged by public utilities for their services, respectively, within the municipality. It did not do this but it enacted a law authorizing each city to enter upon the commercial business of operating public utilities and to fix its own rates, and it is not contended that this was beyond the legislative power. The Public Utilities act, though passed at the same session, did not go into effect until six months later, and if there is any inconsistency between them the later act must prevail. This act placed all public utilities under the supervision of the commission, and if the exception of utilities owned or operated by a municipality cannot be given effect the acts are inconsistent. The one gives the Public Utilities Commission supervision of the business of public utilities and control of rates, while the other gives the municipality the entire supervision and control of the business of any public utility it may own and the regulation of its rates and charges. The effect of the two statutes is that public utilities engaged in commercial operation are divided into two classes,—that is, those owned by a municipality and all others. The former have the privilege of operation without restriction or supervision by the State; the latter have not but must operate under the supervision and control of the Public Utilities Commission. Is the difference of ownership a reasonable basis, having reference to the purpose of the legislation, for the difference in privilege? So far as this question is concerned there is no difference in the character or purpose of the business transacted. No municipal, political or governmental question is involved. The appellant and the appellee each owns and operates an electric plant and sells electricity for the purpose of profit to all persons who want to buy it. What relation has the ownership of their respective plants to the questions of unjust discrimination, extortionate charges and unequal or inferior service, which

the Public Utilities act was intended to prevent? The consumers of the appellant's product may be the same persons as the consumers of the appellee's product, or neighbors side by side. They may be required to pay extortionate rates or different rates for the same service, or if they pay the same rate the service may be inferior. The appellant's customer has a remedy. He may apply to the Public Utilities Commission for relief, and if the facts justify it he is entitled to relief as a legal right. The appellee's customer has no remedy. He can apply only to appellee,—the very authority of whose action complaint is made. In the one case the controversy is submitted to a third party; in the other to one of the parties to the controversy. The appellee's claim with reference to this classification is contained in the following extract from its brief: "The legislature has adopted its own classification of public utilities by authorizing the municipalities to regulate and control municipal public utilities and the State commission to regulate and control privately owned public utilities. This is a reasonable classification, based upon the different conditions arising under municipal and private ownership and operation. In the operation of a municipal public utility the public officials are conducting the business for the people themselves, who are in a position to obtain such rates and regulation as may be reasonably required. On the other hand, privately owned utilities can only be controlled by an independent body, such as a State commission or other agency."

The persons who use the products or service of public utilities are entitled to the benefit of the Public Utilities act, and are entitled to its protection against extortion, discrimination and inferior service, by whomsoever furnished. The furnishing of such service is an ordinary commercial business by whomsoever undertaken. Whether a public utility is owned by a private corporation or a municipal corporation, its relation to its customers is not different. They are under the same compulsion to use its service, are at its

mercy to the same extent. If a customer is oppressed by extortionate charges or discriminated against by a wrongful rate or inferior service, the wrong is the same whether done by a municipal corporation or a private corporation. The difference in ownership does not change the character of the wrong done or justify the refusal of a prompt, adequate and complete remedy in one case which is granted in the other. The fact that by organizing with others complaining customers may be able at some future election to secure a change of administration which will perhaps have the ability and sense of justice voluntarily to correct the wrong does not justify putting municipally owned public utilities in a class separate from other competing public utilities and relieving them from the supervision of the Public Utilities Commission.

The clause which excepts municipally owned or operated public utilities from the definition of a public utility in section 10 of the Public Utilities act is unconstitutional. Section 83 of the act provides that "if any section, subdivision, sentence or clause of this act is for any reason held invalid or to be unconstitutional, such decision shall not affect the validity of the remaining portion of this act." The act can be effectively carried out after eliminating the unconstitutional clause, and it is not necessary to declare the whole act unconstitutional. If some of the provisions of an act of the General Assembly are within the legislative power and others are beyond the legislative power, the former provisions may be held valid while the latter must be held invalid. Section 83 is not a mere declaration of a common law rule but is a declaration of the legislative intention. It expresses the intention that the legislative purpose to establish a commission and give it authority for the regulation of public utilities shall not be defeated by the unconstitutionality of any section, subdivision, sentence or clause of the act. This general purpose of the act must be carried out though parts of it may be declared uncon-

stitutional.  The inclusion of municipal plants within the authority of the commission does not destroy the general legislative scheme,—it merely modifies it in detail.  The General Assembly might have created the commission without exempting municipal corporations.  Though it intended to exempt municipal corporations, it had the power to provide that if such exemption were invalid the act should still be valid without the exemption.  This is the meaning of the declaration in section 83, and it is not the province of the court to say that the legislature did not mean what the words say or did not know what they meant.

In our judgment the decree of the circuit court should be reversed.